STATE OF NEBRASKA, APPELLEE, V. JERRY A. SMITH, JR., APPELLANT.

469 N.W.2d 146

Filed May 10, 1991.   No. 90-114.

112

Bruce E. Stephens for appellant.

Robert M. Spire, Attorney General, and Wynn Clemmer for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

The defendant, Jerry A. Smith, Jr., was found guilty of driving under the influence, disorderly conduct, violating a stop sign, and driving under suspension, all violations of city ordinances of York, Nebraska. He was sentenced to 12 months' probation, fined $550, and had his operator's license suspended for 60 days. Upon appeal to the district court the judgment was affirmed.

The defendant has now appealed to this court and has assigned as error (1) the trial court's sustaining the State's objection to the defendant's examination of the State's witness concerning the chain of custody procedures used by the York Police Department, (2) the admission in evidence of the test results of defendant's urine, and (3) the sufficiency of the evidence to sustain the conviction for disorderly conduct.

The record discloses that on December 4, 1988, at approximately 11:30 p.m., Officer Todd Yost of the York Police

Department observed the defendant's green Ford Maverick turn at an intersection without stopping at a stop sign. Officer Yost activated the red lights on his cruiser and stopped the defendant's vehicle. Shortly thereafter, Officer Roger Wolfe, Jr., arrived on the scene to assist Officer Yost.

Officer Wolfe immediately noticed that the defendant's vehicle was leaking antifreeze and that it had damage to the right front passenger door. Officer Wolfe asked the defendant if he had been involved in an accident. The defendant responded by saying that he had hit a pole several days ago. Officer Wolfe then explained there appeared to be fresh wood fragments with fresh sap on his headlight. The defendant then admitted that he had hit a nearby pole. Officer Wolfe entered his cruiser and proceeded back to the site where, according to the defendant, he had hit the pole. Meanwhile, Officer Yost returned to his cruiser to write a citation for violating the stop sign. At this point, the defendant became very irate and disorderly. According to Officer Yost, the defendant began to slam his fist on the roof and trunk of defendant's car and began yelling profanities at people in cars as they drove past. Officer Yost then asked the defendant to sit in defendant's car. The defendant entered his car, started the motor, and began racing the engine, honking the horn, and making gestures at people.

At that point, Officer Wolfe returned from the site of the defendant's accident. His investigation revealed that the defendant had been involved in an accident and had left the accident scene without stopping, in violation of a York city ordinance. In addition, Officer Wolfe had been informed by the police department dispatcher that the defendant was driving under suspension, a violation of another York city ordinance. Officer Wolfe then arrested the defendant and took him to the police station.

En route to the police station, Officer Wolfe detected a strong odor of alcohol coming from the defendant. At the police station he asked the defendant to undergo sobriety tests. According to Officer Wolfe, the defendant staggered when he attempted to walk a straight line, erred several times when he attempted to recite the alphabet, and failed the finger-to-nose test. Further, Officer Wolfe noticed that the defendant's

clothing was disorderly, his eyes were bloodshot and watery, and his speech was slurred. Officer Wolfe then decided to give the defendant a breath test, but when he was about to administer the test, the defendant became ill. Consequently, Officer Wolfe gave defendant the choice of either a blood or a urine test. The defendant selected a urine test.

Officer Wolfe testified that at 12:54 a.m., he obtained a urine sample from the defendant, a portion of which was poured into a glass "mailing sample tube." The mailing sample tube was sealed and placed in a "mailer tube," which was then signed, dated, and labeled by the officer; sealed and placed in an envelope; and placed in the refrigerator at the police department. The following day, December 6, 1988, the urine sample was sent by certified mail to the Nebraska state health laboratory. On December 7, 1988, Margaret Vencil, a laboratory scientist, tested the urine sample and found that the defendant had a concentration of .209 grams or more by weight of alcohol per hundred milliliters of his urine, in violation of a York city ordinance.

The defendant's first assignment of error contends that the trial court improperly sustained the State's objection to the defendant's examination of the State's witness, Vencil, concerning the chain of custody procedures used by the York Police Department.

Rule 104 of the Nebraska Evidence Rules (Neb. Rev. Stat. § 27-104 (Reissue 1989)) provides that "[p]reliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the judge . . . ."

At the trial, Vencil testified as to the receipt of the sample and tests performed on it. On direct examination, the State's counsel asked Vencil if there was any indication that the sample had been tampered with and what the chain of custody procedures were that she used in regard to the sample. When the State offered the sample in evidence, defense counsel requested permission to examine the witness as to foundation. The defense counsel then asked the following question: "And did you hear him [Officer Wolfe] testify that the sample was not placed in a locked area after he took the sam- - -[?]" Counsel for

the State then objected as follows: "I'm [going to] object to this, judge. This is not foundational for this witness at this time." The defendant contends the trial court erred in sustaining the State's objection. There is no merit in this contention.

The record fails to show that Vencil had any personal knowledge as to chain of custody procedures used at the York police station.

> A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself. This rule is subject to the provisions of section 27-703, relating to opinion testimony by expert witnesses.

Neb. Evid. R. 602 (Neb. Rev. Stat. § 27-602 (Reissue 1989)). As a laboratory scientist at the Nebraska state health laboratory, Vencil had personal knowledge regarding procedures used by the state health laboratory to preserve evidence. She, however, had no personal knowledge of the custody procedures used by the York Police Department. Under these circumstances, the objection was properly sustained.

The defendant's next assignment of error is that evidence as to the test results of his urine sample was improperly admitted because the prosecution failed to show a complete chain of custody in regard to the urine sample. Defendant argues there is a gap in the chain of custody between the point where Officer Wolfe placed the urine sample in the refrigerator at the police station and the time when the sample was received at the state health laboratory. He points out that after the urine sample was collected, it was placed in an unlocked refrigerator at the police station, that the refrigerator was not guarded or controlled by a property officer, and that all members of the police force had access to the refrigerator. Finally, there was no log to record when the sample was removed from the refrigerator and a failure to identify the officer who mailed the sample to the state health laboratory. The defendant contends there were inadequate safeguards to ensure that no one had tampered with the sample and the foundation evidence for the admission of

the urine sample was insufficient.

Whether there is sufficient foundation evidence for the admission of physical evidence must necessarily be determined on a case-by-case basis. *State v. Kerns*, 201 Neb. 617, 271 N.W.2d 48 (1978); *State v. Van Ackeren*, 194 Neb. 650, 235 N.W.2d 210 (1975).

In prior cases involving similar chain of custody issues, this court has held: "Important in such situations are the nature of the exhibit, the circumstances surrounding preservation and custody, and the likelihood of intermeddlers tampering with the object. If substantial identity of one condition with the other condition *is reasonably probable*, the trial court may receive the exhibit in evidence." (Emphasis supplied.) *State v. Huffman*, 181 Neb. 356, 359, 148 N.W.2d 321, 323 (1967). Accord *State v. Langer*, 192 Neb. 525, 222 N.W.2d 820 (1974).

This court examines the evidence supporting the trial court's ruling admitting the urine sample exhibit in evidence because if the urine sample was properly admitted in evidence, then the test results were admissible. The record shows that the urine sample was collected from the defendant at the York police station by Officer Wolfe on December 5, 1988. Officer Wolfe testified that he took the defendant to the bathroom, provided a plastic cup, and witnessed the defendant provide the urine sample. Officer Wolfe testified that a portion of the defendant's urine sample was then poured into a glass "mailing sample tube." The glass mailing sample tube was sealed and placed in a "mailer tube," which was then signed, dated, and labeled by Officer Wolfe; sealed and placed in an envelope; and placed in the refrigerator at the police department. The following day, December 6, 1988, the urine sample was sent by certified mail from the police station to the Nebraska state health laboratory. On December 7, 1988, the state health laboratory received the sample and promptly performed an alcohol analysis on it, using the standard gas chromatography procedure.

The laboratory scientist at the Nebraska state health laboratory testified that on December 7, 1988, she received the urine sample with the seals intact. She further stated there was no evidence of tampering with the sample. Officer Wolfe identified the mailing container as the same container in which

he placed the sealed glass tube containing the urine sample on December 5, 1988, and which was the container identified by Vencil as received by the state health laboratory on December 7, 1988, containing the glass tube with the seal intact.

In *State v. Huffman, supra*, the evidence in question had been stored in an unlocked room at the police station, where it was potentially accessible to employees, to janitors, and at times even to strangers. Nevertheless, this court held the exhibits were admissible in evidence and it was a question for the fact finder to determine under all the circumstances whether there had been sufficient intermeddling or tampering with the exhibits to destroy their credibility.

In this case there was no legally fatal deficiency in the chain of custody. The evidence was sufficient to make it "reasonably probable" that the urine sample analyzed by the laboratory scientist was that of the defendant. The method of storing the evidence eliminated any reasonable likelihood that it had been tampered with by intermeddlers. The rule is well established that "proof that an exhibit remained in the custody of law enforcement . . . officials is sufficient to prove a chain of possession and is sufficient foundation to permit its introduction into evidence." *State v. Langer, supra* at 527, 222 N.W.2d at 822. See, also, *State v. Gutierrez*, 187 Neb. 383, 191 N.W.2d 164 (1971); *State v. Bullard*, 186 Neb. 709, 185 N.W.2d 864 (1971); *State v. Huffman, supra*. It was not error to receive the test results of the defendant's urine sample in evidence.

In his final assignment of error, the defendant contends that the evidence was insufficient to support his conviction of disorderly conduct.

The complaint filed against Smith alleges that he violated city ordinance 24-25, the disorderly conduct provision of the York city ordinances. The disorderly conduct ordinance is not in the record. When an ordinance charging an offense is not made part of the record, "the Supreme Court presumes the existence of a valid ordinance creating the offense charged, and this court will not otherwise take judicial notice of the ordinance." *State v. Topping*, 237 Neb. 130, 131, 464 N.W.2d 799, 800 (1991) (citing *State v. Lynch*, 223 Neb. 849, 394 N.W.2d 651 (1986)).

In *State v. Topping, supra*, the defendant was convicted of disorderly conduct under a city of Omaha ordinance. On appeal he alleged that the evidence was insufficient to support his conviction. As in the present case, the disorderly conduct ordinance was not in the record. Citing *State v. Cottingham*, 226 Neb. 270, 410 N.W.2d 498 (1987), this court held that "when the applicable municipal ordinance is not in the record, this court will presume that the evidence supports the findings of the trial court." *Topping, supra* at 131, 464 N.W.2d at 800.

There being no error, the judgment is affirmed.

AFFIRMED.