STATE OF NEBRASKA, APPELLEE, V. JUSTEEN WILLIAMS, ALSO KNOWN AS JUSTEEN OFFING, APPELLANT.

530 N.W.2d 904

Filed April 27, 1995.   No. S-94-716.

Mark A. Weber, of Walentine, O'Toole, McQuillan & Gordon, for appellant.

Don Stenberg, Attorney General, and Marilyn B. Hutchinson for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, and CONNOLLY, JJ., and MILLER–LERMAN, Judge.

LANPHIER, J.

Justeen Williams was charged with committing murder in the

first degree and with using a firearm to commit a felony for shooting and killing Tamiko Jones on October 11, 1993. After a jury trial in the district court for Douglas County, Williams was adjudged guilty on both counts in conformance with the jury's verdicts. Williams was sentenced to life in prison for the murder conviction and to a consecutive term of 2 to 5 years in prison for the conviction of use of a firearm in the commission of a felony. Williams appeals from this judgment and asserts that the district court erred by (1) allowing evidence of the emergency cesarean section birth of Jones' child immediately following Jones' death, (2) failing to grant Williams' motion for a mistrial following the appearance of a newspaper article, and (3) allowing evidence of a prior incident in which Williams stabbed Jones. Because these assigned errors were not preserved for appeal and do not constitute plain error, we affirm the judgment of the district court.

## BACKGROUND

It is undisputed that on October 11, 1993, Williams shot and killed Jones. Events leading up to the shooting concerned the fact that both Williams and Jones had been dating the same man, Bobby Ashley, and Jones was pregnant with Ashley's child.

On July 23, 1993, the two women fought outside of the apartment where Williams had been staying. By her own admission, Williams stabbed Jones during that fight. After the stabbing, Williams left Omaha and went to Albuquerque, New Mexico. She returned to Omaha about a month later.

On the day of the shooting, Williams and Jones came into contact at the LaFern Williams Recreational Center located in south Omaha. At that time, Williams told Jones that she no longer wanted Ashley and that Jones could have him. Williams was then asked by the manager to leave the recreational center, and she complied.

Later that day, Williams and Jones came into contact outside an apartment located at 2922 S Street. At trial, Williams testified that she was walking home with her neighbor Stephanie Hall and Williams' younger brother. According to Williams, the three walked up some stairs and saw Jones. Williams testified

that Jones began firing a gun at her and that Williams then shot back. However, at the sentencing hearing Williams' counsel stated that Williams had told counsel that the testimony about shooting in self-defense was not true and that Williams meant to hurt Jones, but not kill her.

Immediately after the shooting, Jones' baby was delivered by emergency cesarean section, but died 18 days later.

Jones died from blood loss secondary to a wound from a bullet which entered her back and exited her chest.

## EVIDENCE OF BIRTH

Williams' first assignment of error is that the trial court erred in allowing the prosecution to adduce evidence of the birth of Jones' child. Williams contends this evidence was unduly prejudicial and should have been excluded.

At trial during its opening statement, the State told the jury the following: "The ambulance was called and they rushed her [Jones] to University of Nebraska Medical Center where she died. They performed an emergency Caesarean section on her and a baby boy was delivered, a baby named Delvin. He died 18 days later."

No objections were made to these statements.

At trial, Doris Jones, the mother of Tamiko Jones, testified as follows:

Q. And did you have a daughter by the name of Tamiko Jones?
A. Yes.
Q. What was her date of birth?
A. January 3rd, 1976.
Q. And did your daughter die?
A. Yes.
Q. What was the date of her death?
A. October 11th.
Q. 1993?
A. Yes.
Q. Was she pregnant at that time?
A. Yes.
Q. Was a child delivered of her by Caesarean section after she was shot?

A. Yes.

Q. And that was a male child by the name of Delvin; is that correct?

A. Yes.

Q. He passed away 18 days later? .

A. Yes.

No objections were made to this testimony either. On appeal, however, Williams suggests the opening statement and this testimony should have been excluded as unduly prejudicial pursuant to Neb. Evid. R. 403, Neb. Rev. Stat. § 27–403 (Reissue 1989). Recognizing that generally, one who fails to make a timely objection to evidence waives the right on appeal to assert error in the reception of that evidence, Williams argues that we should find plain error.

Asserting or arguing plain error does not relieve a defendant of properly preserving errors for appellate review.

Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *State v. Campbell, ante* p. 517, 527 N.W.2d 868 (1995).

Rule 403 states in relevant part: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ."

For the purposes of this rule, probative value is a relative concept. The probative value of a piece of evidence involves a measurement of the degree to which the evidence persuades the trier of fact that the particular fact exists and the distance of the particular fact from the issues of the case. *State v. Perrigo*, 244 Neb. 990, 510 N.W.2d 304 (1994). Unfair prejudice means an undue tendency to suggest a decision on an improper basis. *Id.*

The State submits this evidence was probative of Williams' motive for the killing. While proof of motive is not an element of murder in the first degree, any motive for the crime charged is certainly relevant to the State's proof of the intent element. *State v. White*, 244 Neb. 577, 508 N.W.2d 554 (1993).

As the State submits, evidence of the birth of Jones' child tended to prove that Jones was pregnant. From this evidence and from the testimony of Bobby Ashley, Williams' lover, to the effect that the child was his, the jury could have found beyond

a reasonable doubt that Williams deliberately killed Jones out of jealousy. Though the subsequent death of the child may have been somewhat inflammatory, we cannot say that the admission of this evidence in the context of this trial rises to the level of prejudicial or plain error.

## NEWSPAPER ARTICLE

Next, Williams contends the district court erred in failing to grant her motion for a mistrial on the grounds that a newspaper article involving the case was published during the course of trial. The article allegedly contained confidential juvenile court information as described in Neb. Rev. Stat. § 43-3001 (Reissue 1993). However, because the alleged article is not before us we cannot reach this assigned error. See *Bell Fed. Credit Union v. Christianson*, 244 Neb. 267, 505 N.W.2d 710 (1993). It is a basic tenet of Nebraska law that the party appealing has the responsibility for including within the bill of exceptions matters from the record which the party believes are material to the issues presented for review. *Id.* See, also, Neb. Rev. Stat. § 25-1140 (Cum. Supp. 1994). Evidence not made a part of the bill of exceptions may not be considered on appeal. *State v. Rust, ante* p. 503, 528 N.W.2d 320 (1995); *Bell Fed. Credit Union v. Christianson, supra*; *State v. Biernacki*, 237 Neb. 215, 465 N.W.2d 732 (1991).

## PRIOR BAD ACT

Finally, Williams contends the district court erred in admitting evidence that on a previous occasion Williams stabbed Jones. A pretrial hearing on the admissibility of evidence of this prior bad act was held upon the State's motion made pursuant to Neb. Evid. R. 404(3), Neb. Rev. Stat. § 27-404(3) (Cum. Supp. 1994). After that hearing, the district court determined that evidence of the prior bad act would be admissible at trial. However, Williams failed to object to this evidence when adduced at trial. It is fundamental that a party who fails to make a timely objection to evidence waives the right on appeal to assert prejudicial error concerning the evidence received without objection. *State v. Myers*, 244 Neb 905, 510 N.W.2d 58 (1994).

Even had these errors been properly preserved, we could not

say that the trial court abused its discretion in admitting this evidence. We note that Williams bases her argument on rules 404(2) and 403. The admissibility of evidence is reviewed for an abuse of discretion where the Nebraska rules of evidence commit the evidentiary question at issue to the discretion of the trial court. *State v. Carter*, 246 Neb. 953, 524 N.W.2d 763 (1994). We have held that because exercise of judicial discretion is implicit in Neb. Evid. R. 401, Neb. Rev. Stat. § 27–401 (Reissue 1989), it is within the discretion of the trial court to determine relevancy and admissibility of evidence of other wrongs or acts under rules 404(2) and 403, and the trial court's decision will not be reversed absent an abuse of that discretion. *State v. Carter, supra.* Judicial abuse of discretion means that the reasons or rulings of the trial court are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *Id.*

Rule 404(2) is an inclusionary rule which permits the use of relevant prior bad acts for purposes except to prove the character of a person in order to show that such a person acted in conformity with that character. *State v. Carter, supra.* The rule sets forth the circumstances under which evidence of prior bad acts is admissible: as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *State v. Carter, supra.*

However, evidence which is otherwise admissible under rule 404(2) may be excluded under rule 403 if its probative value is substantially outweighed by other considerations. *State v. Carter, supra.*

Accordingly, we review the admission of evidence of other acts by considering (1) whether the evidence was relevant; (2) whether the evidence had a proper purpose; (3) whether the probative value of the evidence outweighed its potential for unfair prejudice; and (4) whether the trial court, if requested, instructed the jury to consider the evidence only for the purpose for which it was admitted. *Id.*

Williams, in her brief, has conceded that the evidence was relevant, that it had a proper purpose, and that the trial court instructed the jury to consider the evidence only for the purpose for which it was admitted. Thus, the only issue raised is

whether the trial court abused its discretion in implicitly ruling that the probative value of the evidence did not outweigh its potential for unfair prejudice.

The trial court's ruling was not untenable and did not deny Williams a just result, especially since Williams' counsel elicited similar testimony on cross-examination and in presenting Williams' defense. While cross-examining Sgt. John Skanes, who investigated the stabbing incident, and while cross-examining Loretta Ashley, Bobby Ashley's mother, the defense elicited testimony concerning the stabbing incident. Later, during Williams' defense, Williams' counsel elicited testimony concerning the incident from Williams herself and from Williams' brother and mother.

### CONCLUSION

Finding the errors complained of not to have been preserved for appeal, and finding no plain error in the record, we affirm the judgment of the district court in all respects.

AFFIRMED.