STATE OF NEBRASKA, APPELLEE, V. DANIEL EONA, APPELLANT.

534 N.W.2d 323

Filed June 30, 1995.   No. S-94-871.

Anthony S. Troia for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, and CONNOLLY, JJ., and HICKMAN, D.J., Retired.

WHITE, C.J.

Daniel Eona was charged by information with first degree murder and use of a firearm in the commission of a felony. Eona and Gary Brunzo were tried together for the December 6, 1993, murder of Henry Thompson. See *State v. Brunzo, ante* p. 176, 532 N.W.2d 296 (1995). A jury convicted Eona on the murder charge, and the district court sentenced him to life imprisonment.

Before trial, Eona filed a motion to suppress some of the testimony of two of Eona's coconspirators, Angel Huerta and Juan Carrera. Huerta and Carrera were to, and in fact did, testify that after they, along with Eona and several other individuals, attended a memorial service for a mutual friend, Michael Campbell, who had been killed during a drive-by

shooting, they wanted to retaliate for Campbell's death. Huerta and Carrera testified that they intended to retaliate by killing someone during a drive–by shooting. They also testified that normally, to conduct a drive–by shooting, they would steal a vehicle so that it would not be recognized.

Huerta and Carrera also testified that after the memorial service, they went to a 7–Eleven store across the street from where the memorial service had been held to make some phone calls. While across the street, Huerta and Carrera saw Eona in the driver's seat of a minivan which they knew Eona did not own. Huerta and Carrera got into the van with both Eona and the victim, Thompson. Huerta and Carrera testified that shortly thereafter, Thompson was shot and Thompson's body was dumped onto the street.

Huerta also testified that after they dumped Thompson's body they proceeded in the van to a house where they thought Nacho Palma resided. Huerta testified that he and Carrera fired shots at the house. Carrera testified that he then accompanied Eona, who had been driving the van all night, to the Missouri River, where Eona disposed of the van.

In his motion in limine, Eona sought to suppress on relevance grounds all Huerta's and Carrera's testimony about the evening's events that had occurred after Thompson's murder. The district court denied Eona's motion. The jury convicted Eona of first degree murder, and the district court sentenced him to life imprisonment. Eona appealed.

Eona assigns three errors in his appeal. Eona contends that the district court abused its discretion in denying his motion in limine and admitting the testimony of his two coconspirators regarding the subsequent drive–by shooting, in admitting evidence of the subsequent drive–by shooting because the danger of unfair prejudice outweighed its probative value, and in denying his motion for a mistrial. Eona therefore contends that his conviction and sentence should be reversed.

The admissibility of evidence is reviewed for an abuse of discretion where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court. *State v. Carter*, 246 Neb. 953, 524 N.W.2d 763 (1994). We have held that because exercise of judicial discretion is implicit

in Neb. Rev. Stat. § 27–401 (Reissue 1989), it is within the discretion of the trial court to determine relevancy and admissibility of evidence of other wrongs or acts under Neb. Rev. Stat. §§ 27–404(2) (Cum. Supp. 1994) and 27–403 (Reissue 1989), and the trial court's decision will not be reversed absent an abuse of that discretion. See *Carter, supra.* Judicial abuse of discretion means that the reasons or rulings of the trial court are clearly untenable, unfairly depriving a litigant of a substantial right, and denying a just result in matters submitted for disposition. *Id.*

Section 27–404(2) is an inclusionary rule which permits the use of relevant other bad acts for purposes except to prove the character of a person in order to show that such a person acted in conformity with that character. *Carter, supra.* The rule sets forth the circumstances under which evidence of other bad acts is admissible: as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.* However, evidence which is otherwise admissible under § 27–404(2) may be excluded under § 27–403 if its probative value is substantially outweighed by other considerations. *Carter, supra.*

Accordingly, we review the admission of evidence of other acts by considering (1) whether the evidence was relevant, (2) whether the evidence had a proper purpose, (3) whether the probative value of the evidence outweighed its potential for unfair prejudice, and (4) whether the trial court, if requested, instructed the jury to consider the evidence only for the purpose for which it was admitted. *Id.*

The Nebraska Evidence Rules define "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." § 27–401. In the case at bar, Huerta's and Carrera's testimony was clearly relevant because it established a motive for killing Thompson: the coconspirators killed Thompson to eliminate him as a witness to the theft of the van and to prevent him from witnessing the drive–by shooting. Furthermore, admitting evidence to establish motive necessarily implies that the evidence was admitted for a proper purpose. Therefore, the

evidence was relevant to establish a motive for the crime charged, and that admission was proper.

Additionally, § 27–403 provides in pertinent part: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." For the purposes of this rule, probative value is a relative concept. The probative value of a piece of evidence involves a measurement of the degree to which the evidence persuades the trier of fact that the particular fact exists and the distance of the particular fact from the issues of the case. *State v. Perrigo*, 244 Neb. 990, 510 N.W.2d 304 (1994). Unfair prejudice means an undue tendency to suggest a decision on an improper basis. *Id.* In the case at bar, the evidence admitted clearly had probative value: it helped establish the coconspirators' motive for killing Thompson. As a result, we are unable to conclude that the district court abused its discretion in admitting this evidence.

Finally, the district court gave a limiting instruction to the jury, both at the time of the testimony and at the close of the trial, instructing the jury to consider the evidence only for the purpose for which it was admitted. The district court instructed the jury as follows:

> The evidence that defendant Daniel Eona may have aided and abetted in a driveby shooting has been received only for the limited purpose of helping you to decide whether the defendant Daniel Eona had the proof of [sic] motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident to commit the crimes charged. You must consider the evidence for that limited purpose and for no other.

Since the evidence admitted was relevant, had a proper purpose, had probative value outweighing its unfair prejudice, and was accompanied by a limiting instruction, we are compelled to conclude that the district court did not abuse its discretion in admitting the evidence.

The decision of the district court is affirmed.

AFFIRMED.