STATE OF NEBRASKA, APPELLEE,
V. ERIC T. KIRKSEY, APPELLANT.
575 N.W. 2d 377

Filed March 6, 1998.   No. S-97-272.

J. William Gallup, of Gallup & Schaefer, for appellant.

Don Stenberg, Attorney General, and Mark D. Starr for appellee.

CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

STEPHAN, J.

A jury convicted Eric T. Kirksey of two counts of first degree murder and two counts of use of a deadly weapon to commit a felony. He appeals the convictions, asserting that prejudicial error occurred at his trial by virtue of evidentiary rulings by the district court and prosecutorial misconduct during closing argument. We conclude that the admission of certain evidence over Kirksey's objection constituted prejudicial error and that Kirksey is therefore entitled to a new trial.

## I. BACKGROUND

On January 3, 1994, the bodies of James Burnett and Terri Hall were discovered in Burnett's car, which was parked in a vacant lot at 61st and Ames Streets in Omaha. The couple had been missing since January 1. Both victims had been shot in the head. Burnett had been shot several times with a .380-caliber weapon. Hall was killed by a .380-caliber bullet which lodged in her brain stem, but she also suffered a wound near her left ear

caused by a smaller caliber weapon. A .25-caliber shell casing and a .25-caliber spent bullet were found in the front passenger compartment where Hall was seated.

During their investigation, law enforcement officers learned that Burnett was one of the leading drug distributors for a California-based drug ring which was operating in Omaha. The murder investigation initially focused on Burnett's associates in California. Subsequently, the investigation focused on Kirksey when some of his associates told police that Kirksey had implicated himself in the homicides.

On December 22, 1995, Kirksey was charged with two counts of first degree murder and two counts of use of a deadly weapon to commit a felony. Following trial in September 1996, a jury found Kirksey guilty on all counts. A three-judge sentencing panel convened by the district court for Douglas County sentenced him to life imprisonment on each of the first degree murder convictions, and 10 to 20 years' imprisonment on each of the weapons convictions, with each sentence to run consecutively. After his motion for new trial was overruled, Kirksey perfected this appeal.

Other facts will be set forth as pertinent to the discussion of specific assignments of error.

## II. ASSIGNMENTS OF ERROR

Restated, Kirksey assigns as error the following actions of the district court: (1) admitting certain testimony of police detective Felands Marion regarding Kirksey's involvement in the Burnett and Hall homicides, (2) admitting evidence of Kirksey's involvement in the shooting of Carvorggio Brown approximately 29 days following the homicides, (3) overruling Kirksey's motions for mistrial, (4) admitting evidence of drug transactions and drug usage by various persons, (5) admitting certain evidence regarding federal narcotics indictments, (6) admitting hearsay testimony with respect to the activities of Clint Crawford, (7) permitting the prosecution to present exculpatory evidence as to other potential suspects in the Burnett and Hall homicides, and (8) permitting the prosecutor to argue facts not in evidence and make derogatory comments about defense counsel during his closing argument.

## III. STANDARD OF REVIEW

In all proceedings where the Nebraska Evidence Rules apply, admissibility of evidence is controlled by the Nebraska Evidence Rules, not judicial discretion, except in those instances under the Nebraska Evidence Rules when judicial discretion is a factor involved in the admissibility of evidence. *State v. Merrill*, 252 Neb. 736, 566 N.W.2d 742 (1997); *State v. Allen*, 252 Neb. 187, 560 N.W.2d 829 (1997); *State v. Morris*, 251 Neb. 23, 554 N.W.2d 627 (1996). The admissibility of evidence is reviewed for an abuse of discretion where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court. *State v. Allen, supra*; *State v. Earl*, 252 Neb. 127, 560 N.W.2d 491 (1997); *State v. McBride*, 250 Neb. 636, 550 N.W.2d 659 (1996).

## IV. ANALYSIS

### 1. Evidence of Drug Transactions

#### (a) Facts

Kirksey filed a pretrial motion in limine to prevent the prosecutor from presenting evidence of drug transactions between Kirksey and individuals other than the homicide victims. The district court overruled the motion, reasoning that Kirksey's general involvement in illicit drug trafficking was relevant to the State's contention that Kirksey committed the murders with a motive to rob Burnett of drugs and money. Additionally, the court held that the probative value of this evidence outweighed its prejudicial effect.

Throughout the trial, several witnesses called by the prosecution testified as to the existence of a drug conspiracy in Omaha involving Burnett and several California residents. Several of these witnesses testified either that they did not know Kirksey or that they had no knowledge concerning the Burnett and Hall homicides. Kirksey's counsel objected to some but not all of the testimony concerning the drug conspiracy.

Brown testified that he purchased crack cocaine from Burnett and sold it to Kirksey, who resold it to others. Brown also testified that Kirksey was acquainted with Burnett.

## (b) Application of Law to Facts

When a court overrules a motion in limine to exclude evidence, the movant must object when the evidence sought to be excluded by the motion is offered during trial. *State v. Merrill, supra.* Error cannot be predicated on the admission of evidence to which no timely objection was made when the evidence was adduced. Neb. Evid. R. 103, Neb. Rev. Stat. § 27-103(1)(a) (Reissue 1995).

Where an objection has once been made to the admission of testimony and overruled by the court, it is unnecessary to repeat the same objection to further testimony of the same nature by the same witness in order to preserve alleged error in the admission of the testimony to which the objection was made. Neb. Rev. Stat. § 25-1141 (Reissue 1995). Kirksey made a relevancy objection to the testimony of Brown and Romalis Ozuna concerning the drug conspiracy, but he did not object to similar testimony by Herbert Blake, Darrell Howard, Thomas Cotton, Wamai Smith, and Ceritta Turner. Where testimony objected to is substantially identical to testimony admitted without objection, its admission is not prejudicial error. *McDonald v. Miller,* 246 Neb. 144, 518 N.W.2d 80 (1994); *State v. Thompson,* 231 Neb. 771, 438 N.W.2d 131 (1989). Thus, Kirksey's failure to object to testimony of other witnesses concerning the existence of the drug conspiracy precludes him from asserting on appeal that the admission of such testimony from Brown and Ozuna constituted prejudicial error.

This assignment of error would lack merit even if it had been properly preserved. Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Neb. Evid. R. 401, Neb. Rev. Stat. § 27-401 (Reissue 1995); *State v. McBride,* 250 Neb. 636, 550 N.W.2d 659 (1996); *State v. Newman,* 250 Neb. 226, 548 N.W.2d 739 (1996). All relevant evidence is normally admissible. *State v. McBride, supra.* Because the exercise of judicial discretion is implicit in determinations of relevancy, the trial court's decision will not be reversed absent an abuse of discretion. *State v. McBride, supra; State v. Eona,* 248 Neb. 318, 534 N.W.2d 323 (1995).

The State contended at trial that Kirksey killed Burnett with the motive of robbing him of money and drugs. Motive is defined as that which leads or tempts the mind to indulge in a criminal act. While proof of motive is not an element of first degree murder, any motive for the crime charged is relevant to the State's proof of the element of intent. *State v. McBride, supra*; *State v. Bronson*, 242 Neb. 931, 496 N.W.2d 882 (1993). We cannot say that the district court abused its discretion in determining that evidence of a drug conspiracy in which both Kirksey and Burnett were involved was relevant to the alleged motive for killing Burnett or in determining that the probative value of such evidence outweighed the potential for unfair prejudice so as to require exclusion under Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 1995).

## 2. EVIDENCE OF FEDERAL INDICTMENT

### (a) Facts

Kirksey and Anthony Murry were incarcerated in the same area of the Douglas County Department of Corrections facility during portions of 1994 and 1995. Murry testified that during this period, he heard Kirksey make statements implicating himself in the shooting of Brown, discussed above. On cross-examination by Kirksey's counsel, Murry testified that "[Kirksey] showed me his [presentence investigation], I showed him mine. We was showing each other the paperwork because we were on the same indictment. I didn't know him. I just seen his name." Defense counsel did not object to this statement or move that it be stricken. During subsequent cross-examination of Murry, defense counsel asked him why Kirksey would tell a complete stranger about his past crimes. Murry responded that he and Kirksey began talking when he told Kirksey that he saw his name on Murry's federal drug indictment. Kirksey's counsel objected and moved for a mistrial on the grounds that Murry's nonresponsive answer was prejudicial in that it disclosed the fact that Kirksey was named in a federal drug indictment. The district court ruled that Murry's answer was in direct response to defense counsel's question and that therefore, there was no basis for a mistrial.

Kirksey's inclusion on a federal drug indictment was also mentioned during Ozuna's testimony. Ozuna testified that Kirksey admitted to him that he murdered Burnett and Hall. During the prosecutor's questioning of Ozuna, the prosecutor asked about telephone calls Kirksey made to Ozuna from jail subsequent to the admission. During this questioning, the prosecutor asked, "What did he tell you in those conversations?" and Ozuna responded, "That he was being charged with a drug conspiracy." Defense counsel objected and moved for a mistrial. The prosecutor replied that he did not expect Ozuna to respond as he did. Rather, he expected Ozuna to say that Kirksey denied any knowledge of the murders after previously admitting his involvement. In ruling on the motion, the trial judge began by noting that his ruling on Murry's testimony did not give the prosecutor license to raise the issue of Kirksey's indictment through other witnesses. However, the judge held:

> In the context of the overall testimony of the drug dealings, the drug use, et cetera, by most all of the witnesses that have been called here, and in direct testimony of various witnesses indicating that . . . the defendant . . . [was] involved in drug sales, drug use, [and] drug dealings, the Court finds that while it is a prejudicial statement to the position of the defendant, that it does not rise to the level of granting a mistrial.

At the request of Kirksey's counsel, the judge admonished the jury to disregard Murry's answer concerning the indictment.

The last mention of the federal drug indictment occurred during Stephen Sanchelli's testimony. The prosecutor asked Sanchelli, an officer with the Omaha Police Division, how many persons had been named in the federal indictment. After the court overruled Kirksey's relevance objection, Sanchelli responded that approximately 34 individuals were indicted.

### (b) Application of Law to Facts

A mistrial is properly granted in a criminal case where an event occurs during the course of the trial which is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus would result in preventing a fair trial. *State v. Trackwell*, 244 Neb. 925, 509

N.W.2d 638 (1994); *State v. White*, 244 Neb. 577, 508 N.W.2d 554 (1993). The decision whether to grant a motion for mistrial is within the discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of discretion. *State v. Woods*, 249 Neb. 138, 542 N.W.2d 410 (1996); *State v. Trackwell, supra.*

We find no abuse of discretion in the refusal of the district court to grant Kirksey's motions for mistrial when certain witnesses referred to Kirksey's federal indictment. As noted, Murry first mentioned the indictment in response to a question asked by Kirksey's counsel on cross-examination. Having initially elicited this fact, Kirksey cannot claim that its second mention by Murry in direct response to another question from defense counsel was so prejudicial as to deprive him of a fair trial. When Ozuna mentioned the indictment again, apparently as an unintended response to a question by the prosecutor on redirect examination, the district court gave a timely and proper admonition to the jury to disregard it. Likewise, because the existence of the federal indictment was initially raised by Kirksey's cross-examination of Ozuna, we conclude that the district court did not abuse its discretion in overruling Kirksey's relevance objection to Sanchelli's testimony regarding the number of persons indicted.

### 3. EVIDENCE EXCULPATING OTHER PERSONS

#### (a) Facts

Celeste Ehlers, a childhood friend of Burnett, testified that Burnett had been involved with several persons from California in the distribution of crack cocaine in Omaha. She stated that in November 1993, Burnett owed $20,000 to Cotton, one of the individuals from California, and that when she learned of Burnett's death, she thought one or more of the California parties were responsible. Kirksey did not object to any of this testimony and, in fact, explored it further on cross-examination of Ehlers.

Cotton, Brian Duke, Smith, and Turner, all former residents of Bakersfield, California, testified at trial regarding the illegal drug trade in Omaha in which they had been involved with

Burnett. At the time of trial, Cotton, Duke, and Smith had been convicted on federal narcotics charges and Turner was incarcerated on a shoplifting conviction. None was asked if he or she killed Burnett or Hall. Only Cotton and Duke were asked if they personally knew who killed the victims, and both responded that they did not. Duke testified that Burnett was an asset to the California dealers because he made a lot of money. Kirksey did not object to the testimony of these witnesses.

Shannon Harris, a friend of Burnett's, called Burnett on Burnett's cellular phone on the afternoon of January 1, 1994. Burnett told Harris that he was on 33d Street and that he was with "Terri and Croft." At that point, Harris heard a male voice say, "Don't move. Don't fuckin' move." Harris then hung up the phone because all she could hear was static. Crawford, an acquaintance of Burnett's, is known by the nickname "Crawf."

Throughout the trial, defense counsel cross-examined law enforcement personnel regarding the adequacy of their investigation, specifically questioning their failure to investigate Crawford more thoroughly in light of Harris' testimony. In response, the prosecutor presented evidence that none of the individuals involved in the drug conspiracy knew of Crawford or connected him in any way with the conspiracy. During Sanchelli's direct examination, the prosecutor asked, "[D]id any of those people [who were federally indicted on drug charges] at any time give you any evidence or information linking Clinton Crawford to the drug conspiracy?" After Kirksey's hearsay objection was overruled, Sanchelli replied, "None." Shortly before this exchange, the prosecutor asked if Sanchelli's investigation had uncovered any evidence linking Crawford to the drug conspiracy, and Sanchelli answered that it had not. Defense counsel did not object to this testimony.

## (b) Application of Law to Facts

Because Kirksey did not object to the testimony of witnesses who were involved with Burnett in drug trafficking, there is no merit to his contention that the district court erred in admitting their testimony. See, § 27-103(1)(a); *Allphin v. Ward*, 253 Neb. 302, 570 N.W.2d 360 (1997); *Benzel v. Keller Indus.*, 253 Neb. 20, 567 N.W.2d 552 (1997).

Nor do we find any prejudicial error with respect to Sanchelli's testimony. The prosecutor's question to Sanchelli on redirect examination does not appear to have been for the purpose of eliciting statements of other persons for the purpose of proving the matter asserted, but, rather, to establish that Sanchelli had no reason to suspect Crawford of committing the homicides. An extrajudicial statement not offered to prove the truth of the matter asserted is not hearsay. *State v. Hansen*, 252 Neb. 489, 562 N.W.2d 840 (1997); *Stang-Starr v. Byington*, 248 Neb. 103, 532 N.W.2d 26 (1995). Thus, Sanchelli's testimony was not hearsay.

### 4. TESTIMONY OF MARION

#### (a) Facts

Marion, a detective with the Omaha Police Division, participated in the investigation of the Burnett and Hall homicides. On direct examination by the prosecutor, Marion testified concerning the nature and scope of the investigation, including the process by which police attempted to include or exclude possible suspects by interviewing witnesses and gathering evidence. Marion further testified that he arrested Kirksey in connection with the homicides.

Defense counsel cross-examined Marion in detail with respect to the investigation, inquiring as to why certain leads were not followed and certain facts not developed. During his cross-examination, Marion admitted that Omaha police officers had arrested a suspect in a highly publicized homicide case who was later released when another man was charged with the crime. The cross-examination included the following exchange: "Q: And at some point, it was your conclusion that Eric Kirksey committed these crimes, and the minute you reached that conclusion you quit investigating all other possible suspects; isn't that a fair statement? A: No, it's not." During further redirect examination shortly after this testimony, Marion testified as follows:

Q: Counsel asked you if you knew who killed James Burnett and Terri Hall. Do you?
A: Yes, I do.
Q: Who?

[Defense counsel]: Just a minute. I object to this. No proper, sufficient foundation. How does he know?

A: He asked.

Q: The objection is overruled.

A: The individual Eric Kirksey (pointing).

During recross-examination, which immediately followed this testimony, Marion admitted that he did not observe the homicides and that his identification of Kirksey as the person who killed Burnett and Hall was based upon his "professional opinion."

Following Marion's testimony, Kirksey's attorney moved for a mistrial on the grounds that Marion should not have been permitted to state an opinion on the ultimate issue in the case. The prosecutor argued that defense counsel had "opened the door" by asking Marion on cross-examination if he "[knew] who killed those people?" The district court denied the motion for mistrial, stating:

> The Court notes for the record that there were numerous questions propounded by defense counsel to the witness, Officer Marion. The Court would agree with the general principle that I think [defense counsel] is trying to build this point on, that if the prosecution on direct examination were to elicit the opinion of such a witness, that would be an objectionable and not a permissible bit of trial presentation on the part of the prosecution.

> The Court notes, however, that in the context of the extremely vigorous cross-examination by defense counsel of each and every method that Officer Marion was trying to explain the techniques used and the manner in which this investigation proceeded over a period of many, many months, that he was repeatedly asked by defense counsel things such as, do you have any direct evidence linking Eric Kirksey with this crime, et cetera. There were numerous questions which came up in that regard.

> And the point about the question of whether he had an opinion or knew who ultimately killed the two parties in this case, I find that his responses do not invade the province of the jury. Rather, I think it's abundantly clear to the jury what their job is going to be, is to sort through the

evidence. And the Court does not find — really, I find hardly any prejudice. And even if there is some prejudice, it's of the Court's opinion of a very minor degree in allowing that question to be answered.

Kirksey subsequently renewed his motion for mistrial based upon a lack of foundation for Marion's testimony identifying Kirksey as the person who committed the homicides. The district court again denied the motion.

### (b) Application of Law to Facts

We begin our analysis of this assignment of error by focusing upon the specific evidentiary issue from which it arises. Marion was not asked for his *opinion* as to who committed the Burnett and Hall homicides; he was asked if he *knew* who committed them. Neb. Evid. R. 602, Neb. Rev. Stat. § 27-602 (Reissue 1995), provides that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself." Under this rule, a witness testifying to objective facts must have had means of knowing the facts from the witness' personal knowledge. *State v. Jacob*, 242 Neb. 176, 494 N.W.2d 109 (1993); *State v. Smith*, 238 Neb. 111, 469 N.W.2d 146 (1991). Prior to asking Marion who committed the homicides, the prosecutor did not present any foundational evidence that Marion had personal knowledge upon which he could answer the question, as required by § 27-602. Subsequent cross-examination established conclusively that he did not. Kirksey's counsel properly objected to the question on grounds of insufficient foundation, and the objection should have been sustained.

The error in admitting Marion's identification of Kirksey as the person who committed the homicides was not cured by Marion's subsequent characterization of that identification as a "professional opinion." The district court recognized that a question eliciting such an opinion would have been improper, and the State concedes in its brief that "it would ordinarily be improper to allow an investigating officer to express his opinion about the ultimate issue in the case, here the identity of the

killer, unless he or she was an eyewitness." Brief for appellee at 13. We agree.

Furthermore, we are not persuaded by the argument that the question asked of Marion on redirect examination was in some way justified by the cross-examination which preceded it. It is true that a party may, by his acts or omissions, waive, or be estopped to make, objections to the admission or exclusion of evidence. *Hoover v. Burlington Northern RR. Co.*, 251 Neb. 689, 559 N.W.2d 729 (1997); *In re Estate of Hill*, 214 Neb. 702, 335 N.W.2d 750 (1983). However, there is no basis for application of that rule in this case. Where a basis exists, vigorous cross-examination of a witness called by an adverse party is consistent with the duty of an attorney to represent his or her client "zealously within the bounds of the law." Canon 7, EC 7-1, of the Code of Professional Responsibility. The fact that Marion was questioned closely by defense counsel concerning conclusions and assumptions made in the course of his investigation did not suspend the operation of § 27-602 on redirect so as to permit the prosecutor to elicit testimony from Marion concerning an objective fact, i.e., the identity of the killer, as to which he had no personal knowledge. Contrary to the prosecutor's assertion, defense counsel did not ask Marion, during prior cross-examination, if he knew who committed the homicides. The district court erred in admitting this testimony over Kirksey's objection.

### 5. SHOOTING OF BROWN

#### (a) Facts

Kirksey was charged with assault resulting from the shooting of Brown on January 30, 1994, less than 1 month after the Burnett and Hall homicides. He pled not guilty, and after presenting evidence that he shot Brown in self-defense, he was acquitted by a jury.

Prior to the trial of the present case, Kirksey filed a motion in limine to prevent the prosecution from offering evidence pertaining to the Brown shooting. He contended that this evidence was irrelevant and that any probative value it may have was outweighed by its unfair prejudicial effect. The district court overruled the motion after reviewing testimony from Kirksey's trial

on charges stemming from the Brown shooting. The court found that there were significant similarities between the Brown shooting and the Burnett and Hall homicides, including the facts that the crimes occurred within a period of 1 month, that all three victims were shot with the same caliber weapon from behind during the commission of an attempted robbery, and that Brown and Burnett were first cousins who were involved together in drug transactions. The district court concluded that this evidence was relevant in that it "supports the State's theory that [Kirksey] was involved in drugs and is probative of [Kirksey's] motive and intent to commit homicide during the commission of a robbery . . . ." The district court further found that the probative value of this evidence outweighed its potential prejudicial effect upon Kirksey.

During the trial, the prosecutor referred to the Brown shooting during his opening statement. Kirksey's objection and motion for mistrial were overruled. Additionally, several witnesses testified about the Brown shooting. The first was Murry, who testified over defense objection that while he and Kirksey were incarcerated in 1994 and 1995, Kirksey told him that he had gone "to [Brown's] house to rob him or whatever and that he beat it in self-defense."

Brown also testified about the incident over defense objection. He stated that beginning in late 1993 he bought cocaine from Burnett and sold it to Kirksey, who would in turn sell it to others. When Brown left Omaha in mid-December to visit relatives in another state, Kirksey owed him $2,100 for cocaine. When Brown returned to Omaha, he made several unsuccessful attempts to contact Kirksey in order to recover the money. Brown testified that on January 30, 1994, Kirksey called to say that he would come to Brown's home later in the day to repay the money. When Kirksey arrived, Brown let him in and agreed to let him use the restroom. Brown testified that as he sat in a chair watching television, Kirksey came out of the restroom and shot him twice in the left temple and cheekbone. Brown stated that Kirksey removed cash from Brown's pockets as he lay on the floor feigning death immediately following the shooting. A short time later, when Brown got up and tried to run from the

apartment, Kirksey shot him in the arm, and after a chase, the two exchanged punches.

Following the direct examination of Brown, the district court gave the following instruction:

> I wish to advise you that the evidence that has been presented as to the incident involving this witness, Mr. Brown, of a shooting and an attempted robbery effort, or a robbery, that we are not litigating in this trial that issue of whether Mr. Kirksey was guilty or not guilty of the shooting of Mr. Brown; and as has already been brought out to you in the voir dire examination and in the opening, that he was found innocent of those charges in a separate trial.

> This evidence is presented for a limited purpose. It is is not admissible to prove what we refer to as bad character of Mr. Kirksey. It is not allowable for that purpose, and it is not allowable to show that anything that he did in this case that we're here for, that he acted in conformity with the character, if you talk about the question of bad character. It is not for that purpose.

> This evidence is admitted for the limited purpose of showing items such as motive, opportunity, intent, preparation, plan, knowledge or identity of the defendant, Mr. Kirksey.

> So I tell you at this point that it is only admitted for that limited purpose, and when I give the final instructions in this case I will give you a further instruction, which is what we call a limiting instruction, as to what the evidence of this episode with Mr. Brown is being admitted for.

The record does not contain any other instruction on this subject.

Three other witnesses testified about the Brown shooting. Over defense objection as to relevance, Ozuna testified that Kirksey called him from jail and stated that he shot Brown in self-defense. On cross-examination, Ozuna acknowledged that Kirksey had been acquitted on criminal charges relating to the Brown shooting.

Earl "Lance" Rahn testified over objection that sometime in January 1994 Kirksey told him that Brown had kicked in Kirksey's door and that he needed protection. Rahn stated that he sold Kirksey a .380-caliber handgun and gave Kirksey a ride

to Brown's apartment building. Kirksey's former wife, Dana Legon, testified over objection that Rahn brought Kirksey home on the night of an "incident" involving Kirksey and Brown which occurred shortly before Kirksey and Legon's marriage in February.

During his closing argument, the prosecutor compared the Brown shooting to the Burnett and Hall homicides by noting that each victim was shot from behind or from the side. Citing testimony from Rahn that Kirksey had admitted taking money from Burnett's person after the shooting, the prosecutor further argued that robbery was the common motive in each crime.

### (b) Application of Law to Facts

The admissibility of evidence pertaining to the Brown shooting must be determined by application of Neb. Evid. R. 404(2), Neb. Rev. Stat. § 27-404(2) (Reissue 1995), which provides that

[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

We have interpreted this rule as one of inclusion, rather than exclusion, holding that it permits the use of relevant "bad acts" for all purposes except to prove the character of a person in order to show that the person acted in conformity with that character. *State v. Newman*, 250 Neb. 226, 548 N.W.2d 739 (1996); *State v. Eona*, 248 Neb. 318, 534 N.W.2d 323 (1995); *State v. Williams*, 247 Neb. 878, 530 N.W.2d 904 (1995). However, evidence that is admissible under rule 404(2) may be excluded under rule 403 if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 403. See, also, *State v. Newman, supra*; *State v. Eona, supra*; *State v. Williams, supra*.

It is within the discretion of the trial court to determine the admissibility of evidence of other wrongs or acts, and the trial court's decision will not be reversed absent an abuse of discre-

tion. *State v. Newman, supra*; *State v. Eona, supra*; *State v. Williams, supra*. In reviewing trial court rulings which have admitted evidence of other crimes, an appellate court considers

> (1) whether the evidence was relevant, (2) whether the evidence had a proper purpose, (3) whether the probative value of the evidence outweighed its potential for unfair prejudice, and (4) whether the trial court, if requested, instructed the jury to consider the evidence only for the purpose for which it was admitted.

*State v. Newman*, 250 Neb. at 240-41, 548 N.W.2d at 750. See, also, *State v. Eona, supra*; *State v. Williams, supra*.

Assuming arguendo that evidence regarding the Brown shooting was relevant and was offered for a proper purpose, matters we need not decide, we view the critical issue as whether the district court abused its discretion in holding that the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice so as to warrant exclusion under rule 403. Probative value is a relative concept within the context of rule 403. *State v. Eona, supra*. The probative value of a piece of evidence involves a measurement of the degree to which the evidence persuades the trier of fact that the particular fact exists and the distance of the particular fact from the issues of the case. *State v. Newman, supra*; *State v. Eona, supra*; *State v. Perrigo*, 244 Neb. 990, 510 N.W.2d 304 (1994). In this case, there are factors which minimize the persuasiveness of the Brown shooting on the issue of whether Kirksey shot and killed Burnett and Hall. The Brown shooting was an isolated incident occurring 29 days after the Burnett and Hall homicides. The case is therefore distinguishable from *State v. Williams*, 205 Neb. 56, 287 N.W.2d 18 (1979), in which multiple murders associated with sexual assaults occurred within 72 hours after similar crimes with which the defendant was charged. We held that these subsequent acts were admissible because they established a "continuous chain of evidence detailing the course of defendant's flight, and the patterned course of criminal conduct which was an integral part of it." *Id.* at 65-66, 287 N.W.2d at 24.

Similarly, in *State v. Eona, supra*, where the defendant was charged with the murder of an occupant of a stolen van, we held

that the district court did not abuse its discretion in admitting evidence that the defendant and his accomplices used the van to commit a drive-by shooting shortly after the homicide, reasoning that the incident was probative of motive, i.e., that the occupant of the van was killed so that he would not be a witness to the drive-by shooting. In *Williams* and *Eona*, the close temporal relationship between the charged crimes and subsequent unlawful acts was a critical factor in the determination that probative value outweighed the risk of potential prejudice. That factor is not present in this case.

The probative value of the Brown shooting to show robbery as a motive in the Burnett and Hall homicides is diminished by several factors. First, there is conflicting evidence as to whether Burnett and Hall were in fact murdered in the commission of a robbery. This theory is supported primarily by the uncorroborated testimony of Rahn, who stated that sometime after the murders, Kirksey admitted stealing $1,000 from Burnett. However, there was also evidence that valuable watches and jewelry were found on the victims' bodies, permitting an inference that robbery was not a motive.

Of greater significance is the fact that Kirksey was acquitted by a jury of criminal charges arising from the Brown shooting after pleading that he acted in self-defense. An acquittal does not, in and of itself, preclude admission of the facts underlying the charge as evidence of other bad acts when offered for one of the purposes specified in rule 404(2). See, *State v. Evans*, 212 Neb. 476, 323 N.W.2d 106 (1982); *Koenigstein v. State*, 101 Neb. 229, 162 N.W. 879 (1917). However, the acquittal is a factor which the court must consider when weighing the probative value of the evidence against the potential for unfair prejudice under rule 403. In this case, we think it was a very important factor. A jury's determination that Kirksey shot Brown in self-defense significantly diminishes the probative value of the Brown shooting to establish robbery as a motive in the Burnett and Hall homicides.

The State argues that the circumstances of the Brown shooting suggest a modus operandi similar to the Burnett and Hall homicides in that all three persons were shot in the temple with a .380-caliber handgun. However, there is no evidence connect-

ing the weapon used in the Brown shooting to the weapon used to kill Burnett and Hall. The only evidence on this subject was Ozuna's testimony that Kirksey told him he grabbed Brown's own gun and used it to shoot Brown in self-defense. Thus, while the fact that all three victims were shot in the head with the same caliber handgun was relevant, its probative value was not high.

For purposes of the balancing test required by rule 403, "unfair prejudice" means an undue tendency to suggest a decision on an improper basis. *State v. Nissen*, 252 Neb. 51, 560 N.W.2d 157 (1997); *State v. Eona*, 248 Neb. 318, 534 N.W.2d 323 (1995). Where the probative value of evidence is outweighed by its potential for unfair prejudice, its admission is error even if an appropriate limiting instruction is given. See *State v. Hernandez*, 242 Neb. 78, 493 N.W.2d 181 (1992). The potential for unfair prejudice in this case involved the risk that notwithstanding the limiting instruction, the jury would conclude that Kirksey had a propensity for assaulting people with a handgun and that the verdict would be influenced by this conclusion. Based upon our review of the facts contained in this record, we conclude that the district court abused its discretion in holding that the probative value of Kirksey's involvement in the Brown shooting was not substantially outweighed by the risk of unfair prejudice. Therefore, the district court erred in admitting evidence of the Brown shooting.

6. HARMLESS ERROR ANALYSIS

Having concluded that the district court erred in admitting Marion's testimony identifying Kirksey as the killer and evidence of the Brown shooting, we must now determine whether the error was prejudicial. The erroneous admission of evidence in a criminal trial is not prejudicial if it can be said that the error was harmless beyond a reasonable doubt. *State v. McBride*, 250 Neb. 636, 550 N.W.2d 659 (1996); *State v. Neujahr*, 248 Neb. 965, 540 N.W.2d 566 (1995). Harmless error exists in a jury trial of a criminal case when the court makes an erroneous evidentiary ruling which, on review of the entire record, did not materially influence the jury in a verdict adverse to the defendant. *State v. McBride, supra*; *State v. Vogel*, 247 Neb. 209, 526 N.W.2d 80 (1995).

Based upon our review of the entire record in this case, we cannot conclude that the erroneous admission of evidence was harmless. While the evidence properly admitted is sufficient to sustain a guilty verdict, it is not overwhelmingly so. There were no eyewitnesses and no physical evidence linking Kirksey to the homicides. There were substantial inconsistencies in the testimony of the key prosecution witnesses regarding incriminating acts and statements by Kirksey, and the credibility of many of these witnesses was impeached on cross-examination. In addition, several members of Kirksey's family testified that they saw him at a family gathering during the time when the crimes allegedly occurred. On this record, we simply cannot conclude beyond a reasonable doubt that improperly admitted evidence did not materially influence the jury in reaching its verdict. Kirksey is therefore entitled to a new trial.

### 7. OTHER ASSIGNMENTS OF ERROR

In view of our remand for new trial, we do not reach Kirksey's assignments of error pertaining to comments made to the jury by the trial judge regarding a newspaper found in the jury room during trial and alleged improper comments during the prosecutor's closing argument.

### V. CONCLUSION

For the reasons stated above, the judgment of the district court is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.

WHITE, C.J., participating on briefs.