BERKSHIRE MUTUAL INSURANCE COMPANY vs. BOULDIN G.
BURBANK, administrator.[1]

Plymouth. January 10, 1996. - May 16, 1996.

Present: LIACOS, C.J., ABRAMS, LYNCH, O'CONNOR & FRIED, JJ.

*Insurance,* Underinsured motorist, Construction of policy, Arbitration.
*Limitations, Statute of. Contract,* Insurance, Construction of contract.
*Arbitration,* Insurance.

The six-year statute of limitations period on a cause of action for underin-
sured motorist benefits begins to run, in the absence of a contrary stat-
ute or contract provision, on the date the insurer violates the insurance
contract by refusal to arbitrate. [660-665]

CIVIL ACTION commenced in the Superior Court Depart-
ment on August 30, 1993.

The case was heard by *Cortland A. Mathers,* J., on a mo-
tion for summary judgment.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Orin H. Meyer* for the defendant.

*Paul R. Kelley* for the plaintiff.

ABRAMS, J. At issue is the time the statute of limitations
begins to run on an action for underinsured motorist benefits.
The plaintiff, Berkshire Mutual Insurance Co. (Berkshire),
argues that the statute begins to run on the date of the ac-
cident or, in the alternative, on the date when the insured
discovers that the tortfeasor is underinsured. The defendant,
Bouldin G. Burbank, argues that the statute begins to run on
the date the insurer violates the insurance contract. Berkshire
commenced this action for declaratory judgment, and a
Superior Court judge allowed Berkshire's motion for sum-

[1]Of the estate of Richard P. Goddard.

mary judgment.[2] Burbank appealed. The case was transferred here on our motion. We conclude that a judgment should be entered declaring that the statute of limitations period began to run at the time Berkshire refused to arbitrate Burbank's claim. We therefore reverse.

*Facts.* The relevant facts are not in dispute. On December 19, 1983, Richard P. Goddard, while crossing a public way in Plymouth, was struck by an automobile driven by Donna Delaney. Goddard died the next day as a result of his injuries. Burbank was appointed administrator of Goddard's estate. In May, 1986, Burbank settled with Delaney's insurer for $10,000, Delaney's policy limit.

At the time of the accident, Goddard lived with his sister Janet, and was covered by the underinsured motorist provisions of Janet's policy with Berkshire. The policy provided that the amount of damages incurred by the injured person would be determined by agreement between the insurer and the injured person, or, if agreement could not be reached, by arbitration. The policy's underinsured motorist benefit limit was $50,000.

After Goddard's death, Berkshire and Burbank discussed Goddard's estate's underinsured motorist claim, but did not reach an agreement as to damages. In August, 1993, Burbank requested that Berkshire submit to arbitration. Berkshire refused, and commenced this action seeking the court's declaratory judgment that the estate's claim was barred by the six-year statute of limitations.

*Statute of limitations.* The basis of an insurer's obligation to pay underinsured motorist benefits "is not its actions resulting in personal injury but, rather, its contractual promise to indemnify against such injury." *Royal-Globe Ins. Co.* v. *Craven*, 411 Mass. 629, 638 (1992). Hence, "an action on an uninsured motorist policy is an action in contract for indemnification," and the applicable limitations period is the six-year period prescribed by G. L. c. 260, § 2 (1994 ed.). *Id.* at 636. That section provides that "[a]ctions of contract . . . shall . . . be commenced only within six years next after the

---

[2]The judge failed, however, to "make [a] binding declaration[ ] of right, duty, status [or] other legal relation." G. L. c. 231A, § 1 (1994 ed.). "[W]e remind litigants and judges that, under G. L. c. 231A, the judge should declare the rights of the parties, even on motions for summary judgment." *146 Dundas Corp.* v. *Chemical Bank*, 400 Mass. 588, 589 n.4 (1987).

cause of action accrues." The question here is when a cause of action for underinsured motorist benefits accrues and the six-year period begins.

The general rule is that a contract action accrues at the time the contract is breached. See *Boston Tow Boat Co.* v. *Medford Nat'l Bank*, 232 Mass. 38, 41 (1919); *Campanella & Cardi Constr. Co.* v. *Commonwealth*, 351 Mass. 184, 185 (1966); *Barber* v. *Fox*, 36 Mass. App. Ct. 525, 527 (1994). Prior to the time when the contract is violated there is no justiciable controversy, and it would be illogical to let the statute of limitations for bringing an action begin to run before the action can be brought. That violation occurred when Berkshire, in 1993, refused to submit to arbitration. Hence, Burbank's underinsured motorist claim was not barred by the six-year contract limitation period. See G. L. c. 206, § 2.

The policy at issue provides, under the heading "Bodily Injury Caused By An Uninsured or Underinsured Auto" that "[t]he determination as to whether an injured person is legally entitled to recover damages from the owner or operator of a responsible auto will be by agreement between us and the injured person. The amount of damages, if any, will be determined in the same way. Arbitration will be used if no agreement can be reached." Our construction of this provision is "guided by the settled rule of interpretation" that contract terms are "to be interpreted . . . in the light of the pertinent facts within [the parties'] knowledge and in such manner as to give effect to the main end designed to be accomplished." *Spaulding* v. *Morse*, 322 Mass. 149, 152 (1947), quoting *Dittemore* v. *Dickey*, 249 Mass. 95, 104 (1924). Accord *Bernard* v. *Cameron & Colby Co.*, 397 Mass. 320, 321-322 (1986); Restatement (Second) of Contracts, § 202 (1) (1979) ("if the principal purpose of the parties is ascertainable it is given great weight").

The main purpose of the policy's arbitration provision was to provide "binding advance consent to arbitrate at the election of either party any dispute which the parties were unable to settle" by agreement.[3] *Glenn Acres, Inc.* v. *Cliffwood Corp.*, 353 Mass. 150, 154 (1967). Hence, Burbank could not have

---

[3]Such provisions are irrevocable: "A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties shall be valid, enforceable and irrevocable." G. L. c. 251, § 1 (1994 ed.).

compelled payment by legal redress until he had first sought arbitration. See *id.* at 154 (where agreement to arbitrate is stated in general terms, clause "should be construed as broadly as the parties obviously intended"); *Massachusetts Coalition of Police, Local 165, AFL-CIO* v. *Northborough*, 416 Mass. 252, 256 (1993) ("[u]nless there is positive assurance that an arbitration clause is not susceptible to an interpretation that covers the asserted dispute . . . an order to arbitrate should not be denied"); *Rae F. Gill, P.C.* v. *DiGiovanni*, 34 Mass. App. 498, 502 (1993) (defendant's interpretation of arbitration clause as non-compulsory "renders it meaningless"). See also A.L. Corbin, 3A Corbin on Contracts § 747 (1952). It follows that Burbank's cause of action accrued under G. L. c. 206, § 2, when Berkshire refused to submit to arbitration. It was at that point that the six-year limitations period began to run.

Our conclusion that (absent a contrary statute or contract provision[4]) the statute of limitations for commencing an action for underinsured or uninsured motorist benefits begins to run when the insurer violates the insurance contract comports with the majority of other jurisdictions. See, e.g., *Spear* v. *California State Auto. Ass'n*, 2 Cal. 4th 1035, 1044 (1992)

---

[4]Some contracts explicitly provide that the limitations period begins to run with the occurrence of a specified event. See, e.g., *Union Auto. Indem. Ass'n* v. *Shields*, 79 F.3d 39, 40 (7th Cir. 1996) (enforcing Indiana policy providing that "[n]o action or arbitration proceeding for the recovery of any claim under this endorsement shall be sustainable . . . unless commenced within two (2) years after the occurrence of loss"); *McGlinchey* v. *Aetna Casualty & Sur. Co.*, 224 Conn. 133, 139 (1992) ("Contracting parties are free to adopt an unambiguous contract provision requiring a demand for arbitration to be made 'within 2 years of the date of [the] accident' "); *Glenn* v. *Prestige Casualty Co.*, 246 Ill. App. 3d 909, 913 (1993) (policy provides that limitations period runs from time of "loss," i.e., when the tort liability of uninsured motorist has been established by judgment or settlement); *Whiting* v. *Prestige Casualty Co.*, 238 Ill. App. 3d 376, 378-379 (1992) (same); *Sallee* v. *Auto Club Ins. Ass'n*, 190 Mich. App. 305, (1991) (upholding contract requirement that demand for arbitration be made within three years of accident); *Lane* v. *Grange Mut. Cos.*, 45 Ohio St. 3d 63, 64 (1989) (contract provision purporting to shorten statute of limitations must be clear and unambiguous). See also Louisiana Rev. Stats. § 9:5629 (West 1995) ("Actions brought for recovery of damages . . . pursuant to uninsured motorist provisions in motor vehicle insurance policies are prescribed by two years reckoning from the date of the accident in which the damage was sustained").

(cause of action accrues when one party refuses to arbitrate).[5] Treatises have reached the same conclusion. See, e.g., J.A. Appleman & J. Appleman, 8D Insurance Law and Practice § 5135.35 ("A cause of action to enforce an agreement to arbitrate does not arise until such time as arbitration is refused").[6] There are two minority views in other jurisdic-

[5]Accord *Blutreich* v. *Liberty Mut. Ins. Co.*, 170 Ariz. 541, 545 (Ct. App. 1991) (statute begins to run when insurer refuses to pay benefits, not on date of accident); *Allstate Ins. Co. v. Spinelli*, 443 A.2d 1286, 1287 (Del. 1982) (no breach of contract to pay uninsured motorist benefits, thus limitations do not begin running, until demand on insurer and refusal to pay); *Whitten* v. *Concord Gen. Mut. Ins. Co.*, 647 A.2d 808, 810 (Me. 1994) (cause of action accrued when insurer breached by refusing to pay claim in full); *Palmero* v. *Aetna Casualty & Sur. Co.*, 606 A.2d 797 (Me. 1992); *Lane* v. *Nationwide Mut. Ins. Co.*, 321 Md. 165, 177 (1990) ("the statute of limitations does not begin running against the insured until the insurer denies the claim, thereby allegedly breaching the contract"); *Jacobs* v. *Detroit Auto. Inter-Ins. Exch.*, 107 Mich. App. 424, 431 (1981) (demand on defendant insurer and defendant's refusal "was the first point at which defendant could be considered to have breached the contract"); *Metropolitan Property & Liab. Ins. Co.* v. *Walker*, 136 N.H. 594, 598 (1993) ("the statute of limitations commenced to run on the date when the insurer rejected the insured's claim for underinsured motorist benefits"); *Allstate Ins. Co.* v. *Altman*, 200 N.J. Super. 269, 275 (1984) ("using basic contract principles . . . matters do not accrue until there is a breach"); *Vega* v. *Farmers Ins. Co. of Oregon*, 134 Or. App. 372 (1995) (absent contrary provision in policy, statute of limitations begins to run when insurer denies coverage); *Webster* v. *Allstate Ins. Co.*, 833 S.W.2d 747, 750 (Tex. App. 1992) (cause of action for breach of uninsured motorist provision accrues on date insurer denies claim); *Safeco Ins. Co.* v. *Barcom*, 112 Wash. 2d 575, 583 (1989) (statute of limitations begins to run when insurer breaches contract); *Plumley* v. *May*, 189 W. Va. 734, 739 (1993) ("We also adhere to the general consensus that the statute of limitations does not begin to run until a breach of the contract occurs"). See also *Edwards* v. *State Farm Mut. Auto. Ins. Co.*, 399 N.W.2d 95 (Minn. App. 1986) (six-year limitations statute does not begin to run until there has been a refusal by the insurer in response to insured's demand for arbitration). But see *Sargent* v. *State Farm Mut. Auto. Ins. Co.*, 486 N.W.2d 14, 16 (Minn. App. 1992) ("We decline to adopt this rule because an insured could . . . indefinitely postpone operation of the statute of limitations by failing to make a demand").

[6]See I.E. Schermer, 2 Automobile Liability Insurance § 39.01[4] (3d ed. 1995) ("Where a demand for arbitration is required by the policy as a condition precedent to action against the insurer, the right to bring suit does not accrue until such time as arbitration has either been successfully invoked or has been waived or refused by the insurer"); A.I. Widiss, 1 Uninsured and Underinsured Motorist Insurance § 7.12 (1992) ("Given the almost uniform view among the applicable judicial precedents that unin-

tions which, for the reasons discussed, we reject.[7]

Berkshire relies on *Wynn* v. *Metropolitan Property & Casualty Co.*, 30 Conn. App. 803, 807-809 (1993), aff'd, 228 Conn. 436 (1994), a case factually similar to this one and involving a similar arbitration clause. *Id.* at 804. In *Wynn*, as in this case, the relevant limitations period was six years and the insured settled with the tortfeasor more than six years before requesting the insurer to submit to arbitration.

The *Wynn* court stated that "[t]he true test [for determining when an action accrues] is to establish the time when the plaintiff first could have successfully maintained an action."

sured motorist insurance claims are subject to the contract statute of limitations, it would be reasonable for the courts to focus on the occurrence which constitutes a 'breach of the contract' by the insurer"). But see G.J. Couch & R.A. Anderson, 18A Couch Cyclopedia of Insurance Law § 75:97 (2d ed. 1983) ("An action under uninsured motorist coverage accrues after the insured files suit against the tortfeasor").

[7]For cases holding that a cause of action for underinsured or uninsured motorist benefits accrues at the time of the accident, see *Bayusik* v. *Nationwide Mut. Ins. Co.*, 233 Conn. 474, 485-486 (1995) (statute of limitations on underinsurance claim runs from date of accident); *State Farm Mut. Auto. Ins. Co.* v. *Kilbreath*, 419 So. 2d 632, 633 (Fla. 1982) ("cause of action for an uninsured/underinsured motorist claim arises on the date of the accident . . . since the right of action stems from the plaintiff's right of action against the tortfeasor"); *Commercial Union Ins. Co.* v. *Wraggs*, 159 Ga. App. 596, 597 (1981) (cause of action arose on date of accident when injuries were sustained).

For cases holding that the action accrues when the insured settles with or obtains judgment against the tortfeasor, or when the insured knows or should have known of the tortfeasor's uninsured or underinsured status, see *State Farm Mut. Auto Ins. Co.* v. *Springle*, 870 P.2d 578, 579 (Colo. Ct. App. 1993) (limitations period runs from date of settlement of tort action, not date of accident); *Wheeler* v. *Nationwide Mut. Ins. Co.*, 749 F. Supp. 660, 662 (E.D. Pa. 1990) (under Pennsylvania law, underinsured motorist claim accrues when insured settles with the underinsured tortfeasor's insurance company); *Ayers* v. *State Farm Mut. Auto. Ins. Co.*, 558 N.E.2d 831 (Ind. Ct. App. 1990) (claim accrues when insured knows of uninsured status of tortfeasor); *Vaughn* v. *State Farm Mut. Auto. Ins. Co.*, 445 So. 2d 224 (Miss. 1984) (cause of action for uninsurance benefits accrued on date appellate court affirmed judgment against tortfeasor). See also *Westchester Fire Ins. Co.* v. *Imperiale*, 157 Misc. 2d 721 (N.Y. 1993) (limitations period does not begin to run until insured knows of uninsured status of tortfeasor); *Allstate Ins. Co.* v. *Giordano*, 108 A.D.2d 910 (N.Y. 1985) (same); *North Carolina Ins. Guar. Ass'n* v. *State Farm Mut. Auto Ins. Co.*, 115 N.C. App. 666, 673 (1994) (cause of action accrued on the date tortfeasor's insurer was declared insolvent); *Effert* v. *Heritage Mut. Ins. Co.*, 160 Wis. 2d 520 (Ct. App. 1990) (same).

*Id.* at 808. The court then stated that the insured's cause of action accrued, at the latest, when she settled with the tortfeasor.[8] *Id.* Implicit in that conclusion is the premise that the insured in *Wynn* could have successfully maintained an action against her insurer before the insurer had in any way violated the insurance contract. Burbank, however, could not have maintained an action prior to Berkshire's refusal to arbitrate. *Wynn*, therefore, is inapposite.

We also reject Berkshire's claim that our decision gives the insured undue power "by merely delaying demand, to let a claim go stale and yet keep it enforceable." Corbin, *supra* at § 643. An insurer can avoid delay by itself compelling arbitration. Moreover, an insurer may deny underinsured motorist coverage if it proves that it was prejudiced by late notice. *Goodman* v. *American Casualty Co.*, 419 Mass. 138, 141 (1994).

The judgment is reversed and the case is remanded to the Superior Court for entry of an order declaring that the statute of limitations period began to run at the time Berkshire refused to arbitrate Burbank's claim.

*So ordered.*

---

[8]Sixteen months after affirming *Wynn*, the Connecticut Supreme Court, in *Bayusik* v. *Nationwide Mut. Ins. Co.*, 233 Conn. 474, 485-486 (1995), stated that an underinsured motorist claimant "was required to file his claim for arbitration within six years from the date of accident," and had done so. The question of when the limitations period begins was not, however, the focus of the opinion.