JACK L. SEEBER, SR., AND SUSAN SEEBER, APPELLANTS,
V. SUSAN HOWLETTE, APPELLEE.
586 N.W. 2d 445

Filed November 20, 1998.    No. S-97-342.

Gregory C. Scaglione and Amy B. Blumenthal, of Koley, Jessen, Daubman & Rupiper, P.C., for appellants.

Lawrence E. Welch, Jr., of Fraser, Stryker, Vaughn, Meusey, Olson, Boyer & Bloch, P.C., for appellee.

WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

STEPHAN, J.

This is a personal injury action arising from a collision between motor vehicles operated by Jack L. Seeber, Sr. (Jack Seeber), and Susan Howlette (formerly Susan Howlette-Martinez). Alleging that Howlette's negligence was the cause of the accident, Jack Seeber claims damages for injuries to his neck, shoulder, and back; Susan Seeber, his wife, asserts a claim for loss of consortium. Following Howlette's admission of liability, a jury returned a verdict in the amount of $5,000 for Jack Seeber and $0 for Susan Seeber, from which the Seebers appeal. We conclude that the Seebers' assignments of error are without merit and affirm the judgment of the district court.

FACTUAL AND PROCEDURAL BACKGROUND

On March 31, 1993, a vehicle operated by Jack Seeber was struck from the rear by a vehicle driven by Howlette. On October 26, 1994, prior to filing this action, Jack Seeber was examined by Dr. Bernard Kratochvil, an orthopedic surgeon, at the suggestion of his attorney. Based upon his examination, Kratochvil concluded that Jack Seeber had sustained an injury to the soft tissue of his neck and back which did not result in

permanent disability. After consulting other physicians, the Seebers filed this action.

After suit was filed, Howlette's counsel contacted Kratochvil to request that he perform an independent medical examination of Jack Seeber and in the process learned of Kratochvil's prior examination. Howlette's counsel then attempted to obtain the records through issuance of a subpoena and notice to depose the custodian of Kratochvil's medical records. The Seebers filed a motion to quash, asserting that Kratochvil was an expert whom they retained in anticipation of litigation but did not intend to call as a witness at trial and that his records were therefore not discoverable under Neb. Ct. R. of Discovery 26(b)(4)(B) (rev. 1996). The district court sustained the motion and ordered that medical records pertaining to Jack Seeber which Kratochvil's office had produced in response to a subpoena duces tecum prior to the hearing on the Seebers' motion to quash should be returned to the Seebers' attorney and that Howlette's counsel should not retain copies.

Anticipating that Howlette would call Kratochvil as a trial witness, the Seebers filed a motion in limine to exclude his testimony on grounds that he was a "paid consultant" retained by them and that his testimony was inadmissible under Neb. Rev. Stat. §§ 27-401 and 27-403 (Reissue 1995). The Seebers moved in the alternative that if Kratochvil were permitted to testify, he should be restricted from identifying the party by whom he had originally been retained. The district court ruled that Kratochvil would be permitted to testify at trial, but that he would not be permitted to identify the party who first retained him because this information was irrelevant.

It was stipulated that Kratochvil's testimony could be presented by videotape deposition taken prior to trial. During his deposition, Kratochvil testified on direct examination regarding the findings he made during his independent medical examination of Jack Seeber and the medical opinions which he reached on the basis of those findings. During cross-examination by the Seebers' counsel, Kratochvil testified generally that he performed independent medical examinations at the request of attorneys for plaintiffs and defendants, as well as various governmental agencies, but conceded that "it's probably weighted

in favor of the defendants." Kratochvil stated that his opinions were not influenced by the party retaining his services and that he always attempted to "give an honest answer."

The Seebers' counsel also cross-examined Kratochvil regarding his relationship with the law firm which represented Howlette. Kratochvil testified that his deposition fee of $800 would be paid by that firm, assuming that it had requested the deposition. He was asked about the frequency with which he performed independent medical examinations at the request of the law firm and replied, "[W]e probably do quite a few for them." He was then asked whether an independent medical examination was one "issued for a particular party in this case."

On redirect examination, Kratochvil testified that he had not been initially retained to examine Jack Seeber by Howlette's counsel, but, rather, by the Seebers' attorney. The Seebers' counsel made a timely relevancy objection and motion to strike this testimony, which the district court overruled based upon its finding that the Seebers' cross-examination raised the issue of initial retention. Counsel for the Seebers preserved his objection and motion to strike before the deposition was presented to the jury. Following entry of judgment on the verdict, the district court overruled the Seebers' motion for new trial, and they perfected this appeal. We granted their petition to bypass.

## ASSIGNMENTS OF ERROR

Restated, the Seebers contend that the district court erred in (1) permitting Howlette to call Kratochvil as a witness, (2) permitting Kratochvil to testify on redirect examination that he was originally retained by the Seebers' attorney, and (3) denying their motion for new trial. They also contend that the verdict rendered was clearly erroneous and insufficient to compensate them for their damages.

## STANDARD OF REVIEW

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is a factor only when the rules make such discretion a factor in determining admissibility. *Smith v. Papio-Missouri River NRD*, 254 Neb. 405, 576 N.W.2d 797 (1998). Because the exercise of judicial discretion is

implicit in determinations of relevancy and admissibility under §§ 27-401 and 27-403, the trial court's decision will not be reversed absent an abuse of discretion. See, *State v. Kirksey*, 254 Neb. 162, 575 N.W.2d 377 (1998); *State v. Freeman*, 253 Neb. 385, 571 N.W.2d 276 (1997).

The amount of damages to be awarded is a determination solely for the fact finder, and its action in this respect will not be disturbed on appeal if it is supported by evidence and bears a reasonable relationship to the elements of the damages proved. *Bristol v. Rasmussen*, 249 Neb. 854, 547 N.W.2d 120 (1996); *ConAgra, Inc. v. Bartlett Partnership*, 248 Neb. 933, 540 N.W.2d 333 (1995); *Records v. Christensen*, 246 Neb. 912, 524 N.W.2d 757 (1994).

A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion. *Hartwig v. Oregon Trail Eye Clinic*, 254 Neb. 777, 580 N.W.2d 86 (1998); *Barnett v. Peters*, 254 Neb. 74, 574 N.W.2d 487 (1998).

## ANALYSIS

Before addressing the Seebers' assignments of error with respect to Kratochvil's testimony, we note an irregularity in the manner in which the record of that testimony was preserved. The videotape containing the deposition testimony was marked as an exhibit at trial but never formally offered. Nevertheless, the Seebers' counsel objected to the presentation of the deposition, and the district court ruled on the objection. While the videotape was never formally received in evidence, the district court advised the jury prior to presentation that the videotape deposition testimony should be considered as evidence. The verbatim transcript of the deposition was not offered at trial. Following trial, the Seebers' counsel unsuccessfully attempted to offer the transcript in connection with a motion for order nunc pro tunc which was overruled by the district court.

In order to make a proper record of testimony presented to a jury by videotape deposition, both the videotape and the verbatim transcript of the deposition should be marked as exhibits and offered and received for purposes of the record only. However, since we find the record in this case sufficient for

consideration of the assignments of error raised with respect to Kratochvil's deposition testimony, we will address those issues.

Admissibility of expert testimony is based on four factors: (1) whether the witness is qualified as an expert; (2) whether the testimony is relevant; (3) whether the testimony will assist the trier of fact; and (4) whether the probative value of the testimony, even if relevant, is outweighed by the danger of unfair prejudice or other considerations. *Childers v. Phelps County*, 252 Neb. 945, 568 N.W.2d 463 (1997). On appeal, the Seebers do not challenge Kratochvil's qualifications as an expert or contend that his testimony regarding Jack Seeber's physical condition at the time of his examination was irrelevant. Rather, they assert that his testimony should have been excluded under § 27-403 because its probative value was substantially outweighed by the danger of unfair prejudice, or was cumulative. For purposes of applying § 27-403, probative value is a relative concept which involves a measurement of the degree to which the evidence persuades the trier of fact that the particular fact exists and the distance of the particular fact from the issues of the case. Unfair prejudice means an undue tendency to suggest a decision on an improper basis. *State v. Kirksey*, 254 Neb. 162, 575 N.W.2d 377 (1998); *State v. Thieszen*, 252 Neb. 208, 560 N.W.2d 800 (1997).

The principal issues at trial were the nature and extent of the injuries which Jack Seeber sustained in the accident and the amount of compensatory damages. The record reflects that Kratochvil examined Jack Seeber approximately 20 months after the accident and that he is the only orthopedic surgeon who evaluated his injuries. Under these circumstances, Kratochvil's testimony concerning the findings of his examination and his medical diagnoses and opinions formed on the basis of those findings had a high degree of probative value. The Seebers contend, however, that this probative value was substantially outweighed by the danger of unfair prejudice stemming from the fact that Kratochvil was an expert originally retained by them.

As a general rule, a party is not precluded from calling as its own witness an expert who has been retained and identified by the opposing party. In *IAFF, Local 831 v. City of No. Platte*, 215

Neb. 89, 337 N.W.2d 716 (1983), we held that where a city's expert witness in a dispute between it and a firefighters' union possessed relevant information regarding prevalent wages and fringe benefit rates, the Commission of Industrial Relations did not err in allowing the union to call the city's expert to testify in the union's case in chief. The witness was not called upon to make any additional investigation and was merely asked to express opinions he had already formed prior to trial. *Id.* We reasoned that it ran contrary to the truth-seeking function of trial "to suggest that unfavorable evidence in the form of an expert's opinion may be kept from either party in the interest of justice and to prevent prejudice." *Id.* at 98, 337 N.W.2d at 722.

In the present case, however, the Seebers contend that Kratochvil's testimony should have been excluded because he examined Jack Seeber only at the request of the Seebers' attorney and was not designated by the Seebers as a trial witness. This argument rests upon rule 26(b)(4)(B), which provides:

> A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

The Seebers contend that this limitation upon discovery of an expert's opinion dictates that the same limitations should apply to the admissibility of such an opinion. Indeed, some courts have so held, although under facts distinguishable from those of the present case. For example, in *Gugliano v. Levi,* 24 A.D.2d 591, 262 N.Y.S.2d 372 (1965), the court held that it was error to permit one party in a malpractice case to call an opposing party's consulting expert to testify on the issue of whether there had been a deviation from the standard of care, where there was no showing that the party could not obtain his own expert and the opinion of the opposing party's expert was based solely upon a review of records and "was not formulated upon the basis of his physical or clinical examination of the plaintiff, so as to make his report available to the plaintiff as part of the con-

ventional exchange of medical information in a negligence action." 24 A.D.2d at 592, 262 N.Y.S.2d at 375. See, also, *Piller v. Kovarsky*, 194 N.J. Super. 392, 476 A.2d 1279 (1984) (holding that defendant in malpractice action would not be permitted to call treating physician to testify on issue of whether there had been deviation from standard of care because of unfairness which would result from inference that plaintiff had vouched for doctor's credibility by retaining him for purposes of treatment).

While there may be circumstances in which the rationale underlying rule 26(b)(4)(B) would require an order under § 27-403 precluding a party from calling an expert witness retained by the opposing party, such circumstances are not reflected in the record of the present case. There is no showing that Kratochvil was privy to the litigation tactics or strategies of the Seebers' counsel. Although he examined x rays which had been taken previously, Kratochvil's opinions were based primarily upon the history which he obtained directly from Jack Seeber and the orthopedic examination which Kratochvil conducted.

While not directly on point, our decision in *Marple v. Sears, Roebuck & Co.*, 244 Neb. 274, 505 N.W.2d 715 (1993), provides some guidance. In that case, which involved a personal injury claim, the defendant identified a vocational rehabilitation expert as a possible trial witness. After the expert interviewed the plaintiff, the defendant redesignated him as a rule 26(b)(4)(B) expert and objected to any mention of the interview at trial on grounds that by adducing such evidence the plaintiff would take unfair advantage of the defendant's trial preparation. In determining that the trial court did not err in rejecting this argument, we wrote that the change in the expert's designation did not change the fact that he had become a "percipient witness" when he interviewed the plaintiff. *Id.* at 280, 505 N.W.2d at 719.

Kratochvil became a percipient witness when he examined Jack Seeber, and his testimony regarding that examination was clearly relevant. The potentially unfair prejudice which could result from the jury's learning that the Seebers had originally retained Kratochvil through their attorney was eliminated by the district court's order that Kratochvil would not be permitted

to testify as to that fact. We conclude that the district court did not abuse its discretion in permitting Kratochvil's testimony subject to that restriction.

We turn, therefore, to the Seebers' second assignment of error, in which they assert that the district court erred in permitting Howlette's counsel to elicit the circumstances of Kratochvil's original retention on redirect examination, after the Seebers' counsel raised issues of bias during cross-examination. In cases where an expert witness originally retained by one party is called as a trial witness by the opposing party, many courts have held that the circumstances of original retention are either irrelevant or so unfairly prejudicial as to require exclusion. For example, the Supreme Court of South Dakota has held that under these circumstances, "the fact of prior employment or payment by the opposite party is not relevant or material." *State Highway Commission v. Earl*, 82 S.D. 139, 148, 143 N.W.2d 88, 92 (1966). In *State ex rel Smith v. Wilkinson-Snowden-McGehee*, 571 S.W.2d 842, 843 (Tenn. App. 1978), the court reasoned that excluding evidence of who initially hired the expert results in no real harm, but found that "a great deal of mischief and harm" would result from allowing such evidence. Similarly, the courts of Florida, Georgia, and Texas disallow testimony regarding who initially retained the expert, reasoning such is prejudicial and harmful. *Sun Charm Ranch, Inc. v. City of Orlando*, 407 So. 2d 938 (Fla. App. 1981); *Logan v. Chatham County*, 113 Ga. App. 491, 148 S.E.2d 471 (1966); *State v. Biggers*, 360 S.W.2d 516 (Tex. 1962). Courts generally find such testimony to be prejudicial because it can create the impression that the party originally hiring the expert was suppressing evidence. See, *Granger v. Wisner*, 134 Ariz. 377, 656 P.2d 1238 (1982); *State v. Biggers, supra.* One federal court has even described the resulting prejudice as " 'explosive.' " *Rubel v. Eli Lilly and Co.*, 160 F.R.D. 458, 460 (S.D.N.Y. 1995) (quoting 8 Charles A. Wright et al., Federal Practice and Procedure: Civil § 2032 (2d ed. 1994)).

Other jurisdictions, however, allow testimony regarding who originally retained the expert, finding that the expert's status "pertains to the weight and credibility" of the testimony. *Fenlon v. Thayer*, 127 N.H. 702, 708, 506 A.2d 319, 323 (1986). See,

also, *Cogdell v. Brown*, 220 N.J. Super. 330, 531 A.2d 1379 (1987) (finding that particularly in medical malpractice cases, credibility of expert is paramount issue and jury should consider which party hired expert); *Board of Ed. of South Sanpete, Etc. v. Barton*, 617 P.2d 347 (Utah 1980) (holding expert's employment bears on issue of his objectivity and bias). We perceive this to be a minority position.

The trial court's initial ruling on Seebers' motion in limine, which precluded inquiry regarding which party originally retained Kratochvil, was consistent with the former line of authority and was, in our view, reasonable and correct. Kratochvil's initial retention by Seeber was irrelevant to Kratochvil's testimony on direct examination by Howlette's counsel, and its disclosure at that stage could have resulted in an unfairly prejudicial inference that the Seebers were attempting to suppress evidence or had vouched for Kratochvil's credibility. However, the circumstances of Kratochvil's retention became relevant when the Seebers' counsel cross-examined Kratochvil regarding his relationship with Howlette's attorneys. This tactic went beyond suggesting that Kratochvil was generally conservative and defense-oriented; it created an inference that Kratochvil's conservative medical opinions concerning Jack Seeber's injury were influenced by the fact that he had been retained to testify in the case by the law firm representing Howlette. Such an inference was necessarily false, since it is uncontroverted that Kratochvil formed his opinions after examining Jack Seeber at the request of Jack Seeber and *his* attorney before the action was filed. The circumstances of Kratochvil's initial retention thus became relevant to dispel the false inference raised by that portion of the cross-examination which focused upon Kratochvil's relationship with Howlette's attorneys. We cannot say that the trial court abused its discretion in concluding that the probative value of Kratochvil's testimony on redirect examination was not substantially outweighed by the danger of unfair prejudice so as to require its exclusion under § 27-403.

We next address the Seebers' argument that the verdict rendered at trial was clearly erroneous and insufficient to compensate them for their damages. Under the standard of review

stated above, the fact finder's determination of damages is given great deference on appeal. See *Nichols v. Busse*, 243 Neb. 811, 503 N.W.2d 173 (1993). Jack Seeber alleged special damages in the amount of $3,650.86 in medical expenses and $2,075.07 for lost wages, and general damages for temporary and permanent disability, physical and mental pain and distress, loss of enjoyment of life, and loss of earning capacity. He proved medical expenses of approximately $2,800 and a loss of wages in the amount of $87.50, representing 2½ hours of work missed each day during a 5-day period. In view of conflicting medical testimony as to whether his injuries were permanent in nature, we cannot say that the verdict of $5,000 does not bear a reasonable relationship to the elements of damage proved.

Susan Seeber contends that the jury's failure to award her any damages on her claim for loss of consortium is clearly inadequate in light of what she characterizes as "uncontroverted" trial testimony regarding her damages. Brief for appellants at 25. In awarding damages, the fact finder is not required to accept a party's evidence at face value, even though that evidence is not contradicted by evidence adduced by the party against whom the judgment is to be entered. *Bristol v. Rasmussen*, 249 Neb. 854, 547 N.W.2d 120 (1996); *Schuessler v. Benchmark Mktg. & Consulting*, 243 Neb. 425, 500 N.W.2d 529 (1993). Susan Seeber's testimony regarding her loss of consortium claim was not uncontroverted, because the conflicting medical testimony created an issue of whether the changes in the marital relationship which she described were in fact caused by the injuries which Jack Seeber sustained in the accident. Therefore, we cannot say that the verdict on Susan Seeber's claim was clearly erroneous.

With respect to the Seebers' remaining assignment of error, we conclude on the basis of our review of the record that the trial court did not abuse its discretion in overruling the Seebers' motion for new trial. For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.

WHITE, C.J., not participating.