CAROL L. SNYDER, APPELLEE, V. JUANITA CASE, APPELLEE, AND EMCASCO INSURANCE CO., INTERVENOR-APPELLANT.

611 N.W. 2d 409

Filed June 2, 2000.    No. S-99-309.

Steven W. Olsen, of Simmons, Olsen, Ediger, Selzer, Ferguson & Carney, P.C., for intervenor-appellant.

Michael J. Javoronok, of Michael J. Javoronok Law Firm, for appellee Snyder.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

EMCASCO Insurance Co. (EMC) appeals from a judgment in favor of Carol L. Snyder for underinsured motorist benefits

under an insurance policy issued by EMC. The district court for Scotts Bluff County, Nebraska, concluded that Snyder's claim was not barred by the statute of limitations, and following trial, a jury awarded a verdict in favor of Snyder, upon which judgment was entered. EMC perfected this timely appeal after the district court denied its motion for new trial. We find no error and affirm.

## BACKGROUND

On July 9, 1993, Snyder was injured in an accident involving a motor vehicle operated by Juanita Case. Snyder filed this action against Case on July 3, 1997, seeking damages for injuries to her neck, arm, shoulder, and back. On April 23, 1998, EMC filed a lien in the district court, claiming it had paid Snyder $5,000 pursuant to the medical payment provision under her policy and had not yet been repaid. On August 13, partial summary judgment was granted in Snyder's favor on the issue of Case's liability. In September, with the knowledge and consent of EMC, Snyder settled her claim against Case by accepting Case's liability insurance limit of $100,000. Snyder then made a demand upon EMC for underinsured motorist benefits provided by her policy. In a letter dated October 12, 1998, an EMC claims supervisor denied Snyder's claim for underinsured motorist benefits.

EMC intervened in this action on October 22, 1998, and Case was subsequently dismissed. In its petition in intervention, EMC alleged that it issued an insurance policy to Snyder which provided underinsured motorist coverage. EMC further alleged that Snyder had given notice of her claim for benefits under the underinsured motorist policy and that EMC had given its permission for Snyder to accept Case's policy limits. EMC alleged that Snyder had made demand for the policy limits under the underinsured motorist coverage, but alleged that this claim was barred by the statute of limitations and prayed for a determination that it had no liability to Snyder under its policy. In her answer and cross-petition, Snyder alleged that she had recovered Case's liability insurance policy limit of $100,000 and had made demand on EMC for underinsured motorist benefits, which EMC denied. Snyder denied that her claim was barred by the statute of limitations and prayed for judgment against EMC.

Both parties filed motions for summary judgment on the statute of limitations issue. The district court granted Snyder's motion on January 8, 1999, finding that because Snyder's underinsured motorist policy contained an "exhaustion clause," "the statute of limitations should begin to run on the date the aggrieved party had the right to institute and maintain suit for underinsured motorist insurance benefits, i.e. the date of compliance with the 'exhaustion clause'." The "exhaustion clause" contained within the underinsured motorist policy EMC issued to Snyder provides as follows: "We will pay under this coverage only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements."

At trial on the issue of damages only, both parties presented evidence regarding the accident and the nature of Snyder's injuries. Jack Greene, a vocational rehabilitation counselor, testified as an expert witness on behalf of Snyder. Greene testified without objection that in his opinion, Snyder suffered a 50-percent loss of earning capacity as a result of the injuries she sustained in the accident. Over EMC's objection on grounds of "relevance and Rule 702," Greene testified that based upon his calculations, Snyder's loss of earning capacity had a value of $353,813.

The parties stipulated to medical bills of $11,330.90. The jury was instructed to determine the amount of damages which would compensate Snyder for her injury and returned a unanimous verdict in the amount of $150,000, upon which judgment was entered. In a ruling on posttrial motions, the district court denied EMC's motion for new trial but reduced the judgment by $101,484.73, representing the amount of personal injury and property damage payments received by Snyder from Case's liability insurance carrier.

## ASSIGNMENTS OF ERROR

EMC contends, summarized, that the district court erred (1) in finding that the statute of limitations on Snyder's claim for underinsured motorist benefits had not expired prior to the time she made her claim against EMC and (2) in allowing testimony from Snyder's vocational rehabilitation counselor, Greene.

## STANDARD OF REVIEW

■ In connection with questions of law and statutory interpretation, an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *Essen v. Gilmore, ante* p. 55, 607 N.W.2d 829 (2000); *Zoucha v. Henn*, 258 Neb. 611, 604 N.W.2d 828 (2000).

■ In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is a factor only when the rules make such discretion a factor in determining admissibility. *Seeber v. Howlette*, 255 Neb. 561, 586 N.W.2d 445 (1998); *Smith v. Papio-Missouri River NRD*, 254 Neb. 405, 576 N.W.2d 797 (1998). Because the exercise of judicial discretion is implicit in determinations of relevancy and admissibility under Neb. Rev. Stat. §§ 27-401 and 27-403 (Reissue 1995), the trial court's decision will not be reversed absent an abuse of discretion. *Seeber v. Howlette, supra.* See *State v. Kirksey*, 254 Neb. 162, 575 N.W.2d 377 (1998). Similarly, our review of the trial court's admission or exclusion of expert testimony which is otherwise relevant will be for an abuse of discretion. *Phillips v. Industrial Machine*, 257 Neb. 256, 597 N.W.2d 377 (1999); *Mahoney v. Nebraska Methodist Hosp.*, 251 Neb. 841, 560 N.W.2d 451 (1997).

■ A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion. *Seeber v. Howlette, supra*; *Hartwig v. Oregon Trail Eye Clinic*, 254 Neb. 777, 580 N.W.2d 86 (1998).

## ANALYSIS

### STATUTE OF LIMITATIONS

Underinsured motorist coverage is a contract which indemnifies an insured when a tort-feasor's insurance coverage is inadequate. *Ploen v. Union Ins. Co.*, 253 Neb. 867, 573 N.W.2d 436 (1998). Because of this derivative nature of underinsured motorist coverage, two statutory limitations periods are arguably applicable to an insured's action against the underinsured motorist carrier. The first is Neb. Rev. Stat. § 44-6413(1)(e) (Reissue 1998), which provides that underin-

sured motorist coverage shall not apply to an action for "[b]odily injury, sickness, disease, or death of the insured with respect to which the applicable statute of limitations has expired on the insured's claim against the . . . underinsured motorist." The second is Neb. Rev. Stat. § 25-205 (Reissue 1995), which provides for a 5-year statute of limitations on written contracts.

In *Kratochvil v. Motor Club Ins. Assn.*, 255 Neb. 977, 588 N.W.2d 565 (1999), we held that § 44-6413(1)(e) operates as a bar to an action for uninsured motorist benefits where the insured claimant did not commence an action against the tort-feasor within the applicable limitations period. However, § 44-6413(1)(e) does not apply if the injured party claiming underinsured motorist benefits commenced a timely claim against the tort-feasor. See *Schrader v. Farmers Mut. Ins. Co., ante* p. 87, 608 N.W.2d 194 (2000). In that circumstance, the 5-year statute of limitations for actions on written contracts set forth in § 25-205 applied to the claim for underinsured motorist benefits under the policy. *Schrader v. Farmers Mut. Ins. Co., supra.*

In this case, it is clear that Snyder commenced her action against Case within the 4-year limitation period governing tort actions. Therefore, § 44-6413(1)(e) is inapplicable, and EMC's statute of limitations defense must be analyzed under § 25-205. In *Schrader*, we did not reach the issue of when a cause of action for underinsured motorist benefits accrues under § 25-205. That issue is now squarely before us. EMC argues that Snyder's claim accrued on the date of the 1993 motor vehicle accident in which she sustained injuries, and is therefore barred under the 5-year limitations period. Snyder argues that because of the exhaustion clause contained in her policy, she had no right to commence an action against EMC until after she recovered the limit of Case's liability insurance policy in 1998 and that her claim against EMC was, therefore, timely.

Generally, a cause of action accrues and the period of limitations begins to run upon the violation of a legal right, that is, when the aggrieved party has the right to institute and maintain suit. *Reinke Mfg. Co. v. Hayes*, 256 Neb. 442, 590 N.W.2d 380 (1999); *Smith v. State*, 250 Neb. 291, 549 N.W.2d 149 (1996); *St. Paul Fire & Marine Ins. Co. v. Touche Ross & Co.,*

244 Neb. 408, 507 N.W.2d 275 (1993). A cause of action in contract accrues at the time of the breach or failure to do the thing agreed to. *Hoeft v. Five Points Bank*, 248 Neb. 772, 539 N.W.2d 637 (1995); *Brtek v. Cihal*, 245 Neb. 756, 515 N.W.2d 628 (1994); *Ed Miller & Sons, Inc. v. Earl*, 243 Neb. 708, 502 N.W.2d 444 (1993); *L.J. Vontz Constr. Co. v. Department of Roads*, 232 Neb. 241, 440 N.W.2d 664 (1989).

As noted, this court has not previously decided the issue of when an insured's cause of action for underinsured motorist benefits accrues. A majority of state courts addressing this issue have held that because the action sounds in contract, the claim accrues and the statute of limitations begins to run on the earliest date the contract is breached. See, e.g., *Grayson v. State Farm Mut. Auto. Ins.*, 114 Nev. 1379, 971 P.2d 798 (1998); *Berkshire Mutual Insurance Co. v. Burbank*, 422 Mass. 659, 664 N.E.2d 1188 (1996); *Vega v. Farmers Ins. Co.*, 323 Or. 291, 918 P.2d 95 (1996); *Eidemiller v. State Farm Mut. Auto. Ins. Co.*, 22 Kan. App. 2d 278, 915 P.2d 161 (1996), *reversed on other grounds* 261 Kan. 711, 933 P.2d 748 (1997); *Plumley v. May*, 189 W. Va. 734, 434 S.E.2d 406 (1993); *Metropolitan Prop. & Liabil. Ins. Co. v. Walker*, 136 N.H. 594, 620 A.2d 1020 (1993); *State Farm Mut. Auto. Ins. Co. v. Springle*, 870 P.2d 578 (Colo. App. 1993); *Blutreich v. Liberty Mut. Ins. Co.*, 170 Ariz. 541, 826 P.2d 1167 (Ariz. App. 1991). Typical of the reasoning in these cases is the statement by the Supreme Judicial Court of Massachusetts that "[p]rior to the time when the contract is violated there is no justiciable controversy, and it would be illogical to let the statute of limitations for bringing an action begin to run before the action can be brought." *Berkshire Mutual Insurance Co. v. Burbank*, 422 Mass. at 661, 664 N.E.2d at 1189. Applying this rationale, these courts hold that the limitations period does not begin to run until there is an occurrence, such as a denial of underinsured motorist benefits, which would give the insured a right to maintain an action on the policy.

There is also some authority supporting the position taken by EMC that a cause of action for underinsured motorist benefits accrues on the date of the underlying tort. See, *Flatt v. Country Mutual Insurance Co.*, 289 Ill. App. 3d 1097, 682 N.E.2d 1228, 225 Ill. Dec. 151 (1997); *Grinnell Mut. Reinsurance Co. v.*

*Recker,* 561 N.W.2d 63 (Iowa 1997); *Green v. Selective Ins. Co. of America,* 144 N.J. 344, 676 A.2d 1074 (1996); *Stagni v. State Farm Mut. Auto. Ins. Co.,* 685 So. 2d 338 (La. App. 1996). Two courts have occupied a middle ground. In *Woodall v. Travelers Indem. Co.,* 699 So. 2d 1361 (Fla. 1997), the Supreme Court of Florida held that although a cause of action for underinsured motorist benefits accrues on the date of the underlying tort, the inclusion of an exhaustion clause in the policy has the effect of tolling the statute of limitations until the insured receives payment from the underinsured motorist's carrier. The Minnesota Court of Appeals has held that a cause of action for underinsured motorist benefits accrues on the date of the underlying tort *except* where the policy contains an exhaustion clause which "established the accrual date for [the] cause of action." *Sargent v. State Farm Mut. Auto. Ins. Co.,* 486 N.W.2d 14, 16 (Minn. App. 1992). See, also, *Cattnach v. State Farm Ins. Co.,* 577 N.W.2d 251 (Minn. App. 1998); *Nelson v. State Farm Ins. Co.,* 567 N.W.2d 770 (Minn. App. 1997).

In urging that we hold that the underinsured motorist claim accrued on the date of the underlying tort, EMC argues that "[a]n insured should not be able to unreasonably delay or indefinitely postpone the operation of the statute of limitations by failing to make a demand for payment." Brief for appellant at 23. We do not find this argument persuasive, in that we perceive no reason for a person who is partially compensated for an injury to be dilatory in pursuing a contractual claim against his or her insurer for the remainder. Moreover, an insurer is capable of protecting its interests by including provisions in its policy obligating the insured to give notice of events which could lead to underinsured motorist exposure. See, *Ploen v. Union Ins. Co.,* 253 Neb. 867, 573 N.W.2d 436 (1998); *Blutreich v. Liberty Mut. Ins. Co.,* 170 Ariz. 541, 826 P.2d 1167 (Ariz. App. 1991). We note that the policy under consideration in this case provides that no judgment in a suit brought against the owner or operator of an "underinsured motor vehicle" is binding upon EMC unless the insured gives notice of the suit and EMC has a "reasonable opportunity" to protect its interests.

We conclude that the majority rule as stated above is sound and consistent with our well-established rule that an

action on a written contract accrues at the time of breach or failure to perform. Accordingly, we hold that an insured's cause of action on an insurance policy to recover underinsured motorist benefits accrues at the time of the insurer's breach or failure to do that which is required under the terms of the policy. The point at which the statute of limitations commences to run must be determined from the facts of each case. *Cavanaugh v. City of Omaha*, 254 Neb. 897, 580 N.W.2d 541 (1998). Accordingly, we examine the record to determine when Snyder's cause of action against EMC accrued in this case.

As noted above, the policy which constituted EMC's contractual undertaking to Snyder specifically provided that it would "pay under this [underinsured motorist] coverage only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements." In *Ploen v. Union Ins. Co.*, 253 Neb. at 877, 573 N.W.2d at 443, we held that an identical exhaustion clause in an underinsured motorist policy is "plain and unambiguous, should be enforced according to its terms, and is not contrary to public policy." Thus, under the language of its policy, EMC had no contractual obligation to pay underinsured motorist benefits to Snyder until she exhausted the limits of Case's liability insurance by the settlement made with the knowledge and consent of EMC in September 1998. Snyder's cause of action against EMC did not accrue until EMC's claims supervisor denied liability for underinsured motorist benefits in a letter to Snyder's attorney dated October 12, 1998. Snyder's cross-petition asserting her claim for underinsured motorist benefits under the policy was filed November 3. Thus, the district court correctly held that Snyder's claim was not time barred, and EMC's first assignment of error is therefore without merit.

## ADMISSION OF EXPERT TESTIMONY

Admissibility of expert testimony is based on four factors: (1) whether the witness is qualified as an expert; (2) whether the testimony is relevant; (3) whether the testimony will assist the trier of fact; and (4) whether the probative value of the testimony, even if relevant, is outweighed by the danger of unfair prejudice or other considerations. *Phillips v. Industrial*

*Machine*, 257 Neb. 256, 597 N.W.2d 377 (1999); *Childers v. Phelps County*, 252 Neb. 945, 568 N.W.2d 463 (1997); *Anderson/Couvillon v. Nebraska Dept. of Soc. Servs.*, 248 Neb. 651, 538 N.W.2d 732 (1995).

EMC does not question Greene's qualifications as an expert in the field of vocational rehabilitation counseling, but contends that his opinion placing a monetary value on Snyder's loss of earning capacity was inadmissible because it

> included a mathematical calculation that he was not qualified to make . . . did not include the proper factors for determining a loss of earning capacity, and was not helpful to the jury to the extent that it was a calculation that lay people could make without the testimony of an expert.

Brief for appellant at 29.

Damages for permanent impairment of future earning capacity may not be based on speculation, probability, or uncertainty, but must be shown by competent evidence that such damages are reasonably certain as the proximate result of the pleaded injury. *Phillips v. Industrial Machine, supra*; *Uryasz v. Archbishop Bergan Mercy Hosp.*, 230 Neb. 323, 431 N.W.2d 617 (1988). In *Uryasz*, we held that where the evidence first shows that there has been an impairment, loss, or diminution of future earning capacity, the process to ascertain compensatory damages for such loss requires (1) the determination of the extent to which such capacity has been diminished, (2) the determination of the permanency of the decrease in earning capacity, and (3) the fixing of the amount of money which will compensate for the determined extent and length of the impairment, including a reduction of the award to its present worth.

In *Phillips*, we held that a vocational rehabilitation counselor's opinion regarding an injured party's impairment of future earning capacity should not have been admitted because the witness assumed that the individual was disabled without any medical evidence to substantiate the assumption. This case is distinguishable from *Phillips* in that Greene testified that he based his opinion regarding Snyder's loss of earning capacity in part upon medical records reflecting her physical condition and degree of impairment. The record contains medical evidence that as the result of the injuries she sustained in the accident,

Snyder has a permanent impairment including a 5-percent whole person impairment for myofascial pain in her cervical spine, and a 10-percent whole person impairment attributable to pain and decreased range of motion in her lumbar spine. There was also medical evidence that Snyder was under lifting restrictions due to her injuries. Greene also testified that he considered and relied upon an occupational therapist's functional capacity assessment of Snyder performed on September 22, 1998, which listed a "variety of physical abilities and limitations" relating to Snyder's ability to perform various job-related physical tasks.

Greene further testified that he performed a labor market analysis upon which he determined that Snyder's physical limitations after the accident resulted in a "very substantial loss of access to the labor market" and reduced her earning potential from $10 to $8 per hour. He stated that his calculation was based upon a full-time work schedule, both before and after the accident, and a remaining worklife expectancy of 20 years, from age 41 to 61.

Neb. Rev. Stat. § 27-702 (Reissue 1995) provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Greene's opinion regarding the nature and extent of the impairment of Snyder's future earning capacity and its monetary value was based on evidence of permanent physical impairment which, on the basis of his labor market analysis, limited the work she could perform and the wages she could earn compared to her preinjury capabilities. We cannot say that Greene's specialized knowledge as a vocational rehabilitation counselor would not assist the jury in determining how Snyder's physical impairment affected her future earning capacity. We therefore conclude that the trial court did not abuse its discretion in overruling the objection to Greene's opinion regarding the value of Snyder's loss of future earning capacity. We note that the trial court properly instructed the jury that any damages for future losses must be reduced to present cash value.

## CONCLUSION

For the reasons stated above, we conclude that the district court did not err in determining that Snyder's claim against EMC for underinsured motorist benefits provided by her insurance policy was not barred by the applicable statute of limitations and, further, that the trial court did not abuse its discretion in permitting testimony in the form of expert opinion regarding the impairment of Snyder's future earning capacity. Likewise, we conclude that the district court did not err in denying the motion for new trial and therefore affirm its judgment.

Neb. Rev. Stat. § 44-359 (Reissue 1998) provides that in a successful action to enforce a policy of insurance by the insured, the court shall tax attorney fees against the insurance carrier. *Control Specialists v. State Farm Mut. Auto. Ins. Co.*, 228 Neb. 642, 423 N.W.2d 775 (1988). Pursuant to this statute and upon the motion and supporting affidavit of Snyder's counsel filed pursuant to Neb. Ct. R. of Prac. 9F (rev. 1996), Snyder is awarded attorney fees for legal services relating to this appeal in the amount of $7,000.

AFFIRMED.